J-S41001-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: P.F., A MINOR, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: E.O., MOTHER, | |
| Appellant | No. 3248 EDA 2013 |

Appeal from the Order October 24, 2013
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000331-2013, CP-51-DP-0000611-2012

| | |
|---|---|
| IN THE INTEREST OF: J.A.R.C., A MINOR, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: E.E.O.R., MOTHER, | |
| Appellant | No. 3250 EDA 2013 |

Appeal from the Order October 24, 2013
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000307-2013, CP-51-DP-100014-2010

BEFORE:  BOWES, DONOHUE, and MUNDY, JJ.

- 1 -

J-S41001-14

MEMORANDUM BY BOWES, J.:                    **FILED JULY 29, 2014**

E.O. ("Mother") appeals from the orders entered on October 24, 2013, wherein the trial court involuntarily terminated her parental rights to two of her children, seven-year-old J.A.R.C. and now-four-year-old P.F.[1]  We affirm.

The Philadelphia Department of Human Services ("DHS") first became involved with this family on June 28, 2010, after it received an Emergency General Protective Services ("EGPS") report alleging that Mother had left then-three-year-old J.A.R.C. and a sibling that is not involved in this appeal unsupervised.[2]  A police officer discovered J.A.R.C. around 2:00 A.M. roaming outside of the boarding house where the family lived.  The child wore only his underwear, and he did not know his Mother's whereabouts. After the children were transported to DHS, it was discovered that the other sibling had unexplained bruises on his head and back.

On the same day, DHS obtained an order of protective custody for J.A.R.C. and his sibling, and on July 12, 2010, both were adjudicated dependent and committed to DHS.  The juvenile court ordered Mother to be

_____

[1]  The instant proceedings did not concern the parental rights of either child's father.  While it is not readily apparent from the certified record transmitted to this Court, DHS reports that the trial court subsequently terminated the parental rights of P.F.'s unknown father and J.A.R.C.'s putative father on January 13, 2014.  We do not address those decisions herein.

[2]  The sibling has reunited with his father and was not subject to the trial court order terminating Mother's parental rights to J.A.R.C. and P.F.

- 2 -

referred for anger management, domestic violence counseling, and that the children be placed in the home of their maternal aunt. Mother was granted weekly supervised visits with J.A.R.C. and his sibling at the agency. However, on July 22, 2011, J.A.R.C. and his sibling were returned to Mother's care under DHS supervision.

Meanwhile, P.F. was born during March 2011. However, she was adjudicated dependent approximately one year later, and J.A.R.C. was recommitted at that time. DHS placed J.A.R.C. and P.F. in separate pre-adoptive foster homes where they remain. J.A.R.C.'s pre-adoptive foster home provides therapeutic treatment for his aggressive behaviors due to past emotional trauma. The initial permanency goal was reunification, and DHS fashioned a family service plan ("FSP") to achieve those ends. Mother's objectives under the FSP included housing, anger management, attending visitation with the children, and treating her mental health problems. To help Mother attain her goals, DHS referred her to Achieving Reunification Center ("ARC") for services.

Mother's compliance with the FSP was limited. Eventually, DHS changed the goal of the FSP to adoption and filed petitions with the court to change the children's permanency goals formally and to terminate Mother's parental rights to J.A.R.C. and P.F. On October 24, 2013, following an evidentiary hearing, the trial court terminated Mother's parental rights to J.A.R.C. and P.F. This timely appeal followed.

Mother complied with Pa.R.A.P. 1925(a)(2)(i) by filing a concise statement of matters complained of on appeal. However, upon reviewing the Rule 1925(b) statement, the trial court deemed Mother's assertions to be mere boilerplate allegations of error that were too vague for it to review. Thus, while the court was able to address the merits of Mother's arguments, it reasoned that we should dismiss the appeal.

Mother presents the following questions for our review:

1. Did the trial court [abuse] its discretion and [err] as a matter of law in terminating mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1) by clear and convincing evidence?

2. Did the trial court [err] by not permitting mother [to] call witnesses to present evidence that could have contributed to mother's defense against the termination petition?

Mother's brief at 4.

At the outset, we address whether this appeal should be dismissed on the basis that Mother's Rule 1925(b) statement failed to advise the trial court of any alleged errors, setting forth boilerplate language without any indication of the substance of the appeal. Upon review of Mother's Rule 1925(b) statement and the applicable law, we decline to dismiss the appeal.

Rule 1925(b) authorizes a trial court to order an appellant to file a "concise statement of matters complained of on appeal." Pa.R.A.P. 1925(b). Failure to comply with a Rule 1925(b) order "may be considered by the appellate court as a waiver of all objections to the order, ruling or other matter complained of." *Id.* Rule 1925 is intended to aid trial judges in identifying and focusing upon those issues which the parties plan to raise on

- 4 -

appeal. Rule 1925 is thus a crucial component of the appellate process.

***Commonwealth v. Lord***, 719 A.2d 306, 308 (Pa.Super. 1998). Regarding

vague or overly broad statements, this Court has also stated:

> When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review. When an appellant fails adequately to identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues.
>
> In other words, a Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no Concise Statement at all . . . ***Lord*** should also apply to Concise Statements which are so vague as to prevent the court from identifying the issue to be raised on appeal.

***Lineberger v. Wyeth***, 894 A.2d 141 (Pa.Super. 2006) (quoting

***Commonwealth v. Dowling***, 778 A.2d 683, 686–87 (Pa.Super. 2001)).

Herein, Mother's Rule 1925(b) statement challenged the sufficiency of

the evidence supporting the goal change and termination orders, and it

assailed the court's evidentiary ruling precluding Mother from presenting two

witnesses. It is evident here that the language used in Mother's 1925(b)

statement relating to the sufficiency of the evidence is boilerplate that

provides no degree of specificity. The claim states only that the evidence

that DHS presented was insufficient, and it does not specify what elements

of the statutory grounds are lacking.

However, we decline to dismiss the appeal notwithstanding the

foregoing shortcomings in Mother's pleading. First, while Mother's

imprecision compelled the trial court to address each of the four statutory

grounds for termination that it relied upon, we can deduce from Mother's argument which statutory ground for termination that Mother seeks to assail on appeal. Moreover, Mother's claim that the trial court erred in precluding her from presenting two witnesses was sufficiently specific to permit the trial court to squarely address the merits of that issue. Thus, we address Mother's issues herein, and, for the following reasons, find no relief is due.

This Court's standard of review regarding an order terminating parental rights is as follows:

> When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re R.N.J.*, 985 A.2d 273, 276 (Pa.Super. 2009) (quoting *In re S.H.*, 879 A.2d 802, 805 (Pa.Super. 2005)).

"In termination cases, the burden is upon [the agency] to prove by clear and convincing evidence that its asserted grounds for seeking the termination of parental rights are valid." *In re R.N.J.*, *supra* at 276. Moreover, we have explained, "[t]he standard of clear and convincing evidence is defined as testimony that is so 'clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.'" *Id*. at 276

(quoting *In re J.L.C.,* 837 A.2d 1247, 1251 (Pa.Super. 2003)). The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. *In re M.G.*, 855 A.2d 68, 73-74 (Pa.Super. 2004). "[I]f competent evidence supports the court's findings, we will affirm even if the record could also support the opposite result." *In re N.C.*, 763 A.2d 913, 917 (Pa.Super. 2000).

Instantly, Mother contends that the "trial court abused its discretion and erred as a matter of law in terminating Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1) by clear and convincing evidence." Mother's brief at 9. The concomitant argument describes all four subsections of § 2511(a) that the trial court relied upon, including 2511(a)(1), (a)(2), (a)(5), and (a)(8). Mother's brief at 9-11. Despite describing all of the pertinent sections, however, Mother challenged only the requirements of section 2511(a)(1). Thus, Mother has seemingly misconstrued our prior statement that we "need only agree with [the trial court's] decision as to any one subsection in order to affirm the termination of parental rights" as pertaining to her own burden of proof. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004).

Mother's misstep is fatal in this case because her failure to assail the remaining statutory grounds that the trial court found to support terminating her parental rights precludes this Court from finding error with any of those

grounds. *Id*. Stated simply, even if we agreed with Mother's criticisms of the court's determination relating to § 2511(a)(1), which we do not, the remaining grounds for termination would not be affected. *Id*. Thus, any argument, such as the one Mother levels herein, which challenges only one of several statutory grounds that a trial court relied upon for terminating parental rights is doomed from its inception.

Moreover, for the reasons discussed *infra*, we find the record sustains the court's determination as to § 2511(a)(1) and (b). Mother's primary argument is, since housing was her only outstanding FSP objective, her parental rights should not be terminated because they cannot be terminated on the basis of an environmental factor. Mother's brief at 14. However, this argument misses the mark because it is only a portion of the section 2511(a)(1) analysis.

Before we confront the merits of Mother's primary assertion, we address the concomitant argument that the trial court abused its discretion when it prevented two witnesses from testifying on Mother's behalf. Mother contends that the proposed testimony supported the explanation she proffered in defense of her parental rights. For the following reasons, we disagree.

When we review a trial court's ruling on the admission or exclusion of evidence, including the testimony of an expert witness, our standard is well-established and very narrow. *Smith v. Paoli Memorial Hospital*, 885 A.2d

1012, 1016 (Pa.Super. 2005). Our job is decidedly not to assess independently the proffered testimony. *Id*. Rather, the decision to admit or exclude evidence lies within the sound discretion of the trial court. *Id*.

A court sitting as trier of fact is presumed to disregard inadmissible evidence and consider only relevant and competent evidence. *Commonwealth v. Moss*, 852 A.2d 374 (Pa.Super. 2004). Evidence is competent if it is material to the issue to be determined at trial. *American Future Systems, Inc.*, *v. BBB*, 872 A.2d 1202, 1212 (Pa.Super. 2005). Evidence is relevant if it has any tendency to make the existence of any fact of consequence to the determination of the action more or less probable than it would be without the evidence. *In re Adoption of Durham*, 467 A.2d 828, 832 (Pa.Super. 1983). "[W]e may reverse [the trial court's finding] only upon a showing of abuse of discretion or error of law." *Smith*, *supra.*

Herein, Mother attempted to present testimony from two witnesses: (1) Eduardo Agostino, a social worker who observed J.A.R.C. in maternal grandparent's home during the prior dependency proceedings; and (2) H.O., the maternal grandfather. In response to the child advocate's offer of proof, Mother explained that the purpose of Mr. Agostino's testimony was to show the interaction between the grandparents and the children and to establish the level of support Mother would receive in their home. N.T., 10/24/13, at 120-22. We find that the trial court properly denied the admission of the

proposed testimony as it pertained to § 2511(a) because it would not directly relate to the statutory grounds to terminate parental rights. As Mr. Agostino's testimony would not have made the ultimate determination of whether DHS established the statutory ground for termination more or less probable than it would have been without it, the evidence is irrelevant. Hence, the trial court did not err in precluding Mr. Agostino's testimony.

As it relates to H.O., Mother's offer of proof indicated that he would testify about his acceptance of Mother and the children into his home if the trial court declined to terminate her parental rights. He also would describe the nature of his relationship with the children. Again, we believe that the trial court correctly denied the admission of this testimony. As the court accurately observed during the evidentiary hearing, "This is not a permanency hearing, where we are deciding where to place these children. [It] is a termination of parental rights hearing and the issues . . . are very clear and distinct." *Id*. at 122-23. The court's statement highlights that, while relevant to the children's placement, H.O.'s proposed testimony was irrelevant to whether DHS satisfied its burden of proving the statutory grounds to terminate Mother's parental rights pursuant to §2511(a)(1).[3]

_____

[3] We note that DHS stipulated that if the court were to order reunification, H.O. would allow Mother to return to his home with the children. N.T., 10/24/13, at 124. Therefore, to the extent that the goal of the testimony was to highlight Mother's potential housing situation, its actual presentation was unnecessary.

Thus, it was within the trial court's discretion to exclude it.[4]

Next, we address the merits of the challenge Mother levels against the trial court's determination that DHS satisfied its burden of proving the statutory grounds outlined in §2511(a)(1). To satisfy § 2511(a)(1), DHS must produce clear and convincing evidence of conduct sustained for at least six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. "[It] does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child *and* refusal or failure to perform parental duties." ***Baby Boy A. v. Catholic Social Services***, 517 A.2d 1244, 1246 (Pa. 1986).

With respect to Mother's conduct during the six months prior to the petition, it is clear that she did not make it a priority to have consistent contact with her children. Agency social worker Alexander Manning testified that since the beginning of 2013, Mother had missed twelve of her forty scheduled visits, spending a total of twenty-eight hours with the children. N.T., 10/24/13, at 55. The previous year she missed about half of her

_____

[4]  We recognize that H.O.'s proposed testimony regarding his relationships with J.A.R.C. and P.F. might be tangentially relevant to the trial court's needs-and-welfare analysis provided that the trial court accepts that the children would reside in H.O.'s home upon their ultimate reunification with Mother. Notwithstanding the potential, albeit tenuous, relevance of this aspect of H.O.'s testimony, we do not find the trial court's decision to bar it tantamount to an abuse of discretion under the present scenario.

thirty-two schedule visits. *Id*. Additionally, multiple visits were cancelled due to Mother's tardiness. *Id*.

Also, both prior to and during the six months preceding the petitions, it is clear Mother did not take advantage of services offered to assist both herself and her children. She had not taken J.A.R.C. to all of his required behavioral therapy sessions, nor had she engaged in the sessions he did attend. *Id*. at 27-28. In addition, Mother refused to sign a consent form permitting J.A.R.C. to receive wraparound services to improve his behavior. *Id*. at 84. Likewise, she failed to complete parenting education through ARC. *Id*. at 17. Although Mother attended parenting classes at another provider, DHS social worker Akilah Owens testified that it did not improve her parenting. *Id*. at 18-19. Additionally, Mother failed to obtain employment until immediately before the trial, over three years after DHS's initial involvement with the family. *Id*. at 156. Accordingly, we conclude that, while Mother did, in fact, fail to satisfy the housing requirements, the foregoing evidence also supports the trial court's conclusion that Mother voluntarily failed to fulfill her parental duties for a period of at least six months prior to the date DHS filed the underlying petition to terminate her parental rights, and that Mother's inaction over that period evidenced her settled purpose to relinquish her parental claim to J.A.R.C. and P.F.

Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must then engage

in three additional lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b). *Adoption of Atencio,* 650 A.2d 1064 (Pa. 1994).

Initially, we observe that, as stated previously, Mother's post-abandonment contact with the children was sporadic. Next, with respect to Mother's explanation for her conduct generally, she asserted that her shortcomings during visitations and medical appointments were due to her lack of knowledge of the location of offices and bus schedules and her inability to take public transportation. N.T., 10/24/13, at 158-160. Additionally, Mother claims that she fulfilled her FSP objective relating to anger management by receiving services to address that issue. She also claims to have been treated for mental health.

The record belies Mother's assertion that she satisfied her FSP goals. In actuality, any treatment that Mother received for anger management was ineffective in light of her subsequent arrest for stalking and harassment of one child's father during DHS's involvement. *Id*. at 16-17. She has even been admonished for engaging in prolonged arguments with the children's fathers during her scheduled periods of visitation with the children. Thus, the anger management component of Mother's goals remains unsatisfied. *Id*. at 62-63. Likewise, although Mother claimed to have initiated mental

health treatment, the therapist she identified was not a licensed medical doctor in the United States, did not report her progress to DHS, and never observed Mother interact with the children. *Id*. at 14, 51, 140, and 143. Thus, we agree with the trial court's implicit findings that Mother's explanation for her conduct was unpersuasive.

The final part of our § 2511 analysis is a consideration of the effect of termination of parental rights on the child pursuant to §2511(b), which provides in pertinent part:

> **(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511.

The test for terminating parental rights consists of two parts. In *In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007), we explained:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of the best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of

the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

It is well-settled that when evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, § 2511(b) does not require a formal bonding evaluation." *In re Z.P.,* 994 A.2d 1108, 1121 (Pa.Super. 2010).

In this matter, the DHS caseworker and foster care case manager testified that the bond, if any, between Mother and her children was meager and that no strong parental bonds existed. In contrast to the superficial bonds that J.A.R.C. and P.F. share with Mother during the sporadic visitations that she elects to attend, the children are in loving and stable foster homes where their needs are consistently met and where they have bonded with their respective foster parents. Indeed, for more than one year while J.A.R.C. and P.F. have been in foster placement, Mother failed to maintain adequate contact and visitation with them.

As for J.A.R.C., Ms. Owens testified that it would be in his best interest to be adopted by his foster mother. She maintained that he shared a parent-child bond with her, and that under her care he would eventually be able to thrive and overcome his behavioral issues. N.T., 10/24/13, at 21-22. The agency social worker shared the same view, stating that there existed a loving relationship between J.A.R.C. and his foster mother, whom he refers to as "Granny." *Id*. at 21-22.

In relation to P.F., Ms. Owens testified that it would also be in her best interest to be adopted by her foster mother. Similar to J.A.R.C., P.F. shared a parent-child bond with her foster parent. *Id*. at 24. Ms. Owens also stated that P.F. calls her foster mother "Mommy," and that she does not ask about Mother between the intermittent visitations. *Id*.

A review of the additional facts supports the trial court's finding that termination of parental rights would best satisfy the children's developmental, physical, and emotional needs and welfare. First, contrary to Mother's argument, she had not completed her FSP objectives. Mother failed to make any legitimate effort to remedy the conditions that brought the children into DHS care. Even when the petitions to terminate parental rights were filed, there was evidence presented that Mother was not able to implement any significant changes in her life as a result of her participation in the various programs required by DHS. Similarly, she still has issues with domestic violence and has not obtained adequate housing. Particularly pertinent to the needs and welfare analysis, we observe that despite DHS's best efforts and resources, Mother never progressed to unsupervised visitations while the children have been in the agency's care. Permanency for these two children should not be delayed any further, and it would be in the best interest of J.A.R.C. and P.F. to be adopted by their respective foster parents.

For all of the foregoing reasons, we affirm the orders terminating Mother's parental rights to J.A.R.C. and P.F.

Orders affirmed.

Judge Mundy Concurs in the Result.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/29/2014