J-S16001-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF Q.R.T., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: K.R. | : | |
| | : | No. 1590 MDA 2014 |
| | : | |

Appeal from the Order Entered August 19, 2014
In the Court of Common Pleas of Northumberland County
Orphans' Court Division, at No(s): 67 - 2013

BEFORE: PANELLA, J., OLSON, J., and OTT, J.

MEMORANDUM BY PANELLA, J.

**FILED MAY 08, 2015**

K.R. (Father) appeals the order of the Court of Common Pleas of Northumberland County, entered August 19, 2014, that terminated his parental rights to his daughter, Q.T. (Child).[1] We affirm.

The record supports the following recitation of the facts of this case. Child was removed originally from the care and custody of her mother on June 23, 2012, when Northumberland County Children and Youth Services (CYS) received a General Protective Services referral that Child had been hospitalized for injuries suffered when her mother, who was intoxicated at the time, dropped her on a concrete surface. Father was living in New Jersey when this incident happened, and, when contacted by CYS, told the agency he would return to Pennsylvania the next day. He never did. The

---

[1] The trial court terminated the parental rights of Child's natural mother in a separate proceeding. Mother did not appeal that termination.

trial court adjudicated Child dependent on July 10, 2012. She has remained in the care and legal custody of CYS ever since.

CYS filed its petition to terminate Father's parental rights on December 13, 2013. The trial court held hearings on that petition on May 19, 2014, and August 1, 2014.

Child's initial goal was to reunite with Father. Father's family service plan (FSP) goals were to obtain employment; maintain stable housing; prove his ability to support Child financially; complete anger management classes; and participate in drug and alcohol services until he was successfully discharged.

Father was incarcerated September 11, 2013, and, at the time of the hearing on the termination of his parental rights, Father did not know when he would be available as a permanent and stable resource for Child. He speculated that it might be some time in 2017. As of the hearing in this matter, Father had not provided CYS, or the trial court, any proof that he had completed, or even started, any of the tasks in his FSP.

Father had several visits with Child while incarcerated, but none between August 2013 and May 2014 because he did not bother to complete the necessary prison paperwork to permit the visits. The visits that occurred did not go well. Child cried uncontrollably, often got sick from the experience, exhibited no awareness of who Father was, and there was no evidence of any bond with him. Father has offered no financial or emotional

support for Child and has had made no effort to contact Child's foster parents through the agency.

Child has resided with and formed a strong bond with her pre-adoptive foster family, with whom she has resided since August 2013.

The trial court entered its decree terminating Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5) and (8), and changing Child's goal to adoption on August 19, 2014. Father timely appealed.

Our standard of review is as follows.

> In an appeal from an order terminating parental rights, our scope of review is comprehensive: we consider all the evidence presented as well as the trial court's factual findings and legal conclusions. However, our standard of review is narrow: we will reverse the trial court's order only if we conclude that the trial court abused its discretion, made an error of law, or lacked competent evidence to support its findings. The trial judge's decision is entitled to the same deference as a jury verdict.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Further, we have stated:

> Where the hearing court's findings are supported by competent evidence of record, we must affirm the hearing court even though the record could support an opposite result.

> We are bound by the findings of the trial court which have adequate support in the record so long as the findings do not evidence capricious disregard for competent and credible evidence. The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence. Though we are not bound by the trial court's inferences and deductions, we may reject its conclusions only if they involve errors of law or are clearly unreasonable in light of the trial court's sustainable findings.

*In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citations omitted).

We note our standard of review of a change of goal:

When we review a trial court's order to change the placement goal for a dependent child to adoption, our standard is abuse of discretion. In order to conclude that the trial court abused its discretion, we must determine that the court's judgment was manifestly unreasonable, that the court did not apply the law, or that the court's action was a result of partiality, prejudice, bias or ill will, as shown by the record.

*In the Interest of S.G.*, 922 A.2d 943, 946 (Pa. Super. 2007) (citation

omitted).

In order to affirm the termination of parental rights, this Court need

only agree with any one subsection of Section 2511(a). *See In re B.L.W.*,

843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

Requests to have a natural parent's parental rights terminated are

governed by Section 2511, which provides, in pertinent part:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

. . .

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on

- 4 -

the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1)-(b).

A party seeking termination of a parent's rights bears the burden of proving the grounds to so do by "clear and convincing evidence," a standard that requires evidence that is "so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re T.F.*, 847 A.2d 738, 742 (Pa. Super. 2004) (citations omitted). Further,

[a] parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*In the Interest of K.Z.S.*, 946 A.2d 753, 759 (Pa. Super. 2008) (internal citations omitted).

To terminate parental rights pursuant to Section 2511(a)(1), the person or agency seeking termination must demonstrate through clear and convincing evidence that, for a period of at least six months prior to the filing of the petition, the parent's conduct demonstrates a settled purpose to relinquish parental rights or that the parent has refused or failed to perform

parental duties. *See In Re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003).

With respect to subsection 2511(a)(1), our Supreme Court has held:

> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*Matter of Adoption of Charles E.D.M., II*, 708 A.2d 88, 92 (Pa. 1988).

Further,

> the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re N.M.B.*, 856 A.2d 847, 854-855 (Pa. Super. 2004) (citations omitted).

The Adoption Act provides that a trial court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b). The Act does not make specific reference to an evaluation of the bond between parent and child but our case law requires the evaluation of any such bond. However, this Court has held that the trial court is not required by statute or precedent to order a formal bonding evaluation performed by an expert. *See In re K.K.R.-S*., 958 A.2d 529, 533 (Pa. Super. 2008).

In regard to incarcerated persons, our Supreme Court has stated:

[I]ncarceration is a factor, and indeed can be a determinative factor, in a court's conclusion that grounds for termination exist under § 2511(a)(2) where the repeated and continued incapacity of a parent due to incarceration has caused the child to be without essential parental care, control or subsistence and that [sic] the causes of the incapacity cannot or will not be remedied.

. . .

[W]e now definitively hold that incarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing "essential parental care, control or subsistence" and the length of the remaining confinement can be considered as highly relevant to whether "the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent," sufficient to provide grounds for termination pursuant to 23 Pa.C.S. § 2511(a)(2). If a court finds grounds for termination under subsection (a)(2), a court must determine whether termination is in the best interests of the child, considering the developmental, physical, and emotional needs and welfare of the child pursuant to § 2511(b). In this regard, trial courts must carefully review the individual circumstances for every child to determine, *inter alia*, how a parent's incarceration will factor into an assessment of the child's best interest.

*In re Adoption of S.P.*, 616 Pa. 309, 328-329, 47 A.3d 817, 828, 830-831

(2012) (internal citations omitted).[2]

Our examination of the record reveals that the trial court's decision to

terminate Father's parental rights under subections 2511(a)(1) and (b), and

---

[2] The Supreme Court cited its decision in *In re: Adoption of McCray*, 331 A.2d 652, 655 (1975), for the proposition that termination may be appropriate for an incarcerated parent who has failed to perform his parental duties for a six-month period of time. *See* 47 A.3d at 828.

- 7 -

to change Child's goal to adoption is supported by clear and convincing evidence, and that there was no abuse of the trial court's discretion.

We have read the orphan courts' opinion in this matter and we are satisfied that it is thorough and complete. Accordingly, we affirm the order on the basis of the thoughtful, concise, and well-written opinion of the Honorable Anthony J. Rosini, that we adopt as our own.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/8/2015

| | |
|---|---|
| **IN RE:** | **In The Court Of Common Pleas** |
| **Q.T.,** | **Northumberland County, Pa** |
| **A minor child** | |
| | **Orphan's Court Division** |
| | **Adoptee No. 67 of 2013** |
| | **Children's Fast Track Appeal** |

## OPINION

### Factual & Procedural Background

Appellant K⬛ R⬛ (Natural Father) has appealed this Court's order of August 19, 2014, terminating his parental rights. The order in question followed hearings conducted on May 19, 2014 and August 1, 2014[1] on Children & Youth Services(The Agency)'s Petition for Involuntary Termination of Parental Rights filed December 3, 2013 in the matter of Q.T. (Minor Child), after which the Court entered a decreeterminating the parental rights of Natural Father with respect to Minor Child[2].

The minor child was originally removed from the care and custody of Natural Mother on June 23, 2012, following a General Protective Services (GPS) referral received the day prior alleging that the minor child had been hospitalized as a result of having been dropped onto a concrete surface during a period while the Natural Mother was intoxicated. Natural Father was not present, as he was at that time residing in New Jersey. The minor child was unresponsive upon arrival at the hospital, and was eventually flown by medical helicopter to another medical facility. When contacted by Agency personnel, Natural Father told them that he would return to Pennsylvania the following day, however he did not do so. Thereafter, the Minor Child was adjudicated dependent on July 10, 2012 and remained in the legal and physical custody of The Agency.

Natural Father was ordered to obtain and maintain stable housing suitable for the minor child, to participate in visitation, to obtain and maintain employment and prove the ability to financially support the minor child, to participate in and complete any and all recommended classes, to participate in drug and alcohol services until successfully discharged, and to attend anger management classes until successfully discharged.(**Order of Adjudication and Disposition-Child Dependent**, July 24, 2012).He has not been able to provide any proof that he complied with any of these directives nor has he demonstrated any ability to provide for the needs and welfare of the Minor Child.

---

[1] The May 19 hearing was presided over by the Hon. Senior Judge Harold F. Woelfel, Jr. The August 1 hearing was presided over by the undersigned, who also entered the August 19 order.

[2] Natural Mother's parental rights were also involuntarily terminated with respect to the Minor Child by separate order on August 19, 2014.

1

## Issues Presented

Natural Father sets forth the following in his Concise Statement of Matters Complained of on Appeal, filed 18 September 2014[3]:

1) The Court committed an error of law in finding that the Agency had presented clear and convincing evidence that grounds for involuntary termination exist.

2) The Court committed an error of law in determining that the best interest of the Minor Child would be served by terminating the Natural Father's parental rights.

## Standard & Scope of Review

The Pennsylvania Supreme Court has set forth its scope and standard of review as follows:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re. Adoption of S.P.*, 616 Pa. 309, 47 A.3d 817 (Pa. 2012), citing *In re: R.J.T.*, 608 Pa. 9, 9 A.3d 1179, 1190 (Pa. 2010).

## Legal Reasoning

### 1) The Agency Presented Clear And Convincing Evidence Of The Existence Of Grounds For Involuntary Termination

The Agency established by clear and convincing evidence the Natural Father's repeated failure to perform parental duties as well as his failure and incapacity to remedy the situation which has left the Minor Child without essential parental care, control or subsistence necessary for her physical and mental well-being. The father has been incarcerated since September 11, 2013 and was denied parole in March of this year. At this point he does not have a release date and his maximum release date is not until 2017. It is clear that Natural Father cannot currently provide permanency for the Minor Child and cannot point to a time certain when he will be able to do so.

---

[3] Notice of appeal was served upon the President Judge rather than upon the trial judge.

2

Natural Father does not have stable housing and does not know the date of his release.[4] Natural Father has participated in visits with the minor child; however, he has been incarcerated for the majority of the Minor Child's life. His visits have taken place inside prison facilities. Natural Father had no visits with the Minor Child from August of 2013 until March of 2014 due to his failure to complete paperwork to permit visits in the institution in which he was held. Since the placement of the Minor Child, Natural Father participated in supervised visitation while housed at the Northumberland County Prison and at the Snyder County Prison prior to the filing of the petition (**N.T., Involuntary Termination of Parental Rights**, May 9, 2014, at p. 22-23). Natural Father has also participated in two (2) supervised visits with the Minor Child at SCI Rockview, one in March of 2014 and one in April of 2014 (**Id.**, at 52). Both of these visits took place after the filing of the Petition for Involuntary Termination of Parental Rights. Caseworkers testified that the Minor Child would initially cry uncontrollably, often to the point of vomiting, when taken for visits with Natural Father. (**Id.**, at 22-23. During later visits, this behavior subsided somewhat, but the caseworker testified that the Minor Child did not know who Natural Father was (**Id.**, at 53). During visits with Natural Father, the Minor Child generally would cling to the caseworker and exhibit little or no bond with Natural Father (**Final Decree**, August 19, 2014).

Natural Father has not been employed nor provided any financial support for the Minor Child since the Minor Child was adjudicated dependent and has been, as noted above, incarcerated almost continuously between that time and the present. Natural Father had indicated to Agency Personnel at some point that he was taking parenting classes at SCI Rockview (his location since November of 2013), however no proof or certification was ever provided either to The Agency or presented to the Court. Natural Father did complete a Substance Abuse Intervention program at Gaudenzia in April of 2013 (**N.T., Involuntary Termination of Parental Rights**, May 9, 2014, at 66). Natural Father has not presented to the Court anything to show that he has completed the ordered anger management classes.

Although Natural Father's current incapacity to remedy the situation is caused primarily by his incarceration this alone does not toll his obligation to take affirmative steps to remedy the conditions. The Superior Court has held that a parent's incarceration does not preclude termination of parental rights if the incarcerated parent fails to utilize given resources and to take affirmative steps to support a parent-child relationship. *In re D.J.S.*, 737 A.2d 283, 1999 Pa. Super. 214 (Pa. Super. 1999). The Pennsylvania Supreme Court has held that while incarcerated, a parent is expected to utilize whatever resources are available to him in order to foster a continuing close relationship with his children. *Adoption of Baby Boy A.* 517 A.2d 1244, 512 Pa. 517 (Pa. 1986).

Where the parent does not exercise reasonable firmness in "declining to yield to obstacles" his parental rights may be forfeited. *In re A.L.D.* 797 A.2d 326, 2002 Pa. Super. 104 (Pa. Super. 2002). An incarcerated parent's responsibilities are not tolled

---

[4] His maximum release date is 2017; he was most recently denied parole in March of this year (**Final Decree**, August 19, 2014).

3

during incarceration. The Court must inquire whether the parent utilized available resources to maintain a closer relationship with the child while he or she was in prison. *Id.* at 106. A parent is expected to be steadfast in overcoming obstacles to maintaining the parent-child relationship. *In re Burns*, 379 A.2d 535, 474 Pa. 615 (Pa. 1977).

Similarly, relative to subsections (5) and (8) of 23 Pa.C.S.§2511(a), Natural Father has not remedied the conditions leading to the removal of the Minor Child and those conditions still exist. There is no indication that he will, or even can, remedy these conditions within a reasonable amount of time.

The Pennsylvania Supreme Court has made clear that, "incarceration is a factor, and indeed can be a determinative factor, in a court's conclusion that grounds for termination exist under § 2511(a)(2) where the repeated and continued incapacity of a parent due to incarceration has caused the child to be without essential parental care, control or subsistence and that the causes of the incapacity cannot or will not be remedied." *In re Adoption of S.P.*, 616 Pa. 309, 328-329, 47 A.3d 817, 2012 Pa. LEXIS 1168, 2012 WL 1764190 (Pa. 2012).

The Supreme Court further pointed out that this standard has often been misapplied relative to §2511(a) as a whole, and clarified its position relative to incarceration of a natural parent by stating,

> [W]e now definitively hold that incarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing 'essential parental care, control, or subsistence' and the length of the remaining confinement can be considered as highly relevant to whether 'the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent,' sufficient to provide grounds for termination pursuant to 23 Pa.C.S.§2511(a)(2)...[i]f a court finds grounds for termination under subsection (a)(2), a court must determine whether termination is in the best interests of the child, considering the developmental, physical, and emotions needs and welfare of the child pursuant to §2511(b). In this regard, trial courts must carefully review the individual circumstances for every child to determine, inter alia, how a parent's incarceration will factor into an assessment of the child's best interest. *Id.*, at 332.

In this case the Natural Father has been incarcerated throughout the termination proceedings. His visits with the child have been inconsistent, there was no evidence presented that he has completed any of the court-ordered programs while incarcerated, he has not provided financial support for the Minor Child, and he has made very little effort to maintain contact with the child while incarcerated. He has never contacted the Minor

4

Child's Foster Parents (**N.T., Involuntary Termination of Parental Rights**, May 9, 2014, at p. 95), and has only sent one card, through a friend, to the Minor Child (**Final Decree**, August 19, 2014).He is unable to provide a date on which he will be able to fulfill his parental duties. The needs and welfare of the child cannot be put on hold simply on the hope that the Natural Father will at some unknown date in the future be capable of fulfilling his parental duties.

As noted by our Supreme Court, a decision to terminate parental rights is never made lightly, nor without some sense of compassion for the parent, especially where it is based upon parental incapacity. However, the legislature has provided that a parent who is incapable of performing his duties is just as unfit as a parent who refuses to do so. *In re Adoption of S.P.,* 47 A.3d 817, 616 Pa. 309 (Pa. 2012). In this case, such a finding was justified by the facts clearly and convincingly presented at the termination hearings.

2)      **The Court Correctly Determined That The Best Interests of the Minor Child Would Be Served By Terminating Parental Rights.**

Once a court determines that a parent's conduct warrants termination, the needs and welfare of the Minor Child must then be examined to determine whether termination of parental rights would be in the best interest of the Minor Child. *In re. L.M.,* 923 A.2d 505, (Pa.Super. 2007).

Here, the Court examined the existence and quality of the bond between Natural Father and the Minor Child and found that no bond exists. The Minor Child does not recognize Natural Father as her father (**N.T., Involuntary Termination of Parental Rights**, May 9, 2014, at p. 53). There is no evidence of any bond, and in the absence of such evidence, the Court reasonably inferred that no such bond exists between Natural Father and Minor Child.Further, the Minor Child has established a firm bond with her foster family, a family with whom she has lived since August of 2013 and that is willing to provide permanency for the Minor Child (**N.T., Involuntary Termination of Parental Rights**, May 9, 2014, at p. 85, p. 92).

Conclusion

For the foregoing reasons, the Appeal of Natural Father is without merit and should be dismissed.

BY THE COURT:

Anthony J. Rosini, Judge

5