J-S37031-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF:  S.R.T., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF:  W.Y.O., MOTHER | No. 3311 EDA 2014 |

Appeal from the Order October 21, 2014
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-DP-0025185-2008,
DP-51-AP-0000439-2013

BEFORE:  GANTMAN, P.J., SHOGAN, J., and LAZARUS, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED JULY 06, 2015**

W.Y.O. (Mother) appeals from the trial court's order that granted a goal change to adoption and involuntarily terminated her parental rights to her child, S.R.T. (born September 2006).[1]  Due to Mother's failure to comply with treatment plans and her inability to provide a safe and adequate environment to fulfill S.R.T.'s needs, we affirm.

S.R.T. lived with Mother, her natural father, C.T. (Father), and half-sibling, D.D., until she was removed from the home in September 2008. Prior to S.R.T. being removed from the home, the family was receiving Services to Children in Their Own Home (SCOH) based upon a substantiated General Protective Services (GPS) report indicating inadequate supervision

---

[1] S.R.T.'s father's parental rights were also terminated during the same proceeding; he did not file an appeal.

and medical neglect in the home; S.R.T. was diagnosed with failure to thrive.

On September 24, 2008, the Department of Human Services (DHS) received a Child Protective Services (CPS) report alleging that Father was sexually molesting D.D. According to D.D., Father also allegedly sexually abused S.R.T. The person making the CPS report alleged that Mother's response to this allegation was that Father "was just fondling the child and didn't penetrate." DHS Exhibit 4. Mother also struggled with drug addiction and depression. S.R.T. was placed in foster care based upon Mother's lack of capacity to provide S.R.T. with adequate care and supervision. S.R.T. was taken into DHS custody on September 26, 2008, and she has remained in the same pre-adoptive foster home since placement.

DHS created a service plan for Mother with a permanency goal of reunification with S.R.T. The service plan objectives included that Mother maintain her sobriety; participate in mental health treatment regularly; complete all treatment recommendations and provide documentation of her progress; learn to use age-appropriate behavior; learn to understand sexual victimization; obtain and maintain adequate housing; obtain and maintain job training or employment; and maintain regular visitation and contact with S.R.T. DHS referred Mother to the Achieving Reunification Center (ARC) program for services, referred her to Shelter Care Plus for housing needs, and provided tokens for transportation to attend visits with S.R.T.

Due to Mother's failure to comply with the majority of the services required to meet the objectives set forth in the service plan, DHS filed a petition to involuntarily terminate Mother's rights on August 2, 2013, pursuant to 23 Pa.C.S. §§ 2511(a)(1), (2), (5), (8)[2] and (b) of the Adoption

_____

[2] Section 2511(a) of the Adoption Act provides, in relevant part:

(a) **General rule.** – The rights of a parent in regard to a child may be terminated after a petition is filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties;

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent;

. . .

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

. . .

(8) The child has been removed from the care of the parent by the court or under voluntary agreement with an agency, twelve months or more have elapsed from the date of the removal or placement, the conditions which led to the removal or placement of the child continue

*(Footnote Continued Next Page)*

Act.[3]   At this point, S.R.T. had been in foster care for nearly five years. After a hearing on October 21, 2014, the trial court entered a final decree terminating Mother's parental rights to S.R.T.  Mother subsequently filed this timely appeal.[4]

Mother presents the following issues for our review:

> 1. Did DHS make reasonable efforts to assist [M]other in being reunited with [S.R.T.]?
>
> 2. Did the department sustain [its] burden that [M]other's rights should be terminated?

Brief for Appellant, at 5.

It is well established that:

> In a proceeding to terminate parental rights involuntarily, the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.  The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."  It is well established that a court must examine the individual circumstances of each and every case and consider all explanations offered by the parent to determine if the evidence

*(Footnote Continued)* ───────────

> to exist and termination of the parental rights would best serve the needs and welfare of the child.

23 Pa.C.S. § 2511(a).

[3] 23 Pa.C.S. §§ 2101-2938.

[4] It is noted that though a timely notice of appeal was filed, the trial court provided the certified record well beyond its due date and Mother filed two applications for extension of time to file briefs, resulting in this case's panel listing being delayed for multiple months.

> in light of the totality of the circumstances clearly warrants termination.

*In re Adoption of S.M.*, 816 A.2d 1117, 1122 (Pa. Super. 2003) (citation omitted). *See also In re C.P.*, 901 A.2d 516, 520 (Pa. Super. 2006) (party seeking termination of parental rights bears burden of proving by clear and convincing evidence that at least one of eight grounds for termination under 23 Pa.C.S. § 2511(a) exists and that termination promotes emotional needs and welfare of child as set forth in 23 Pa.C.S. § 2511(b)).

We review a trial court's decision to involuntarily terminate parental rights for an abuse of discretion or error of law. *In re A.R.*, 837 A.2d 560, 563 (Pa. Super. 2003). Our scope of review is limited to determining whether the trial court's order or decree is supported by competent evidence. *Id.*

Mother asserts that reasonable efforts were not made to assist her in reunification with S.R.T. Specifically, Mother claims that reasonable efforts were not made during the period between March 27, 2013, when a Family Service Plan (FSP) meeting was held in which DHS changed S.R.T.'s permanency goal to adoption,[5] and October 21, 2014, the date Mother's

---

[5] After the FSP meeting in which DHS changed S.R.T.'s goal to adoption, a hearing was held in which the trial court acknowledged the appropriateness of the goal change due to Mother's lack of compliance and scheduled a goal change and termination of parental rights hearing for August 19, 2013. The August 19, 2013 hearing was continued several times, due to court functions and a request made by Father's counsel, before it was finally held on October 21, 2014.

rights were terminated. Mother bases this argument upon social worker Bessie Lee indicating at the termination hearing that after the permanency goal was changed to adoption, extra efforts were not made to assist Mother in meeting her service plan objectives.

However, our Supreme Court has held that an agency making "reasonable efforts" is not a requirement for termination under 23 Pa.C.S. § 2511(a)(2). *In re D.C.D.*, 105 A.3d 662, 673 (Pa. 2014). Additionally, this argument fails to take into account that for four and one-half years prior to the goal change, DHS made significant efforts to assist Mother in achieving reunification. Those efforts were apparent by the fact that for a period of time in 2011 and 2012, Mother regularly attended mental health treatment and was permitted to have unsupervised visits with S.R.T. Because of compliance in these areas, reunification remained the goal for several years despite Mother consistently failing to engage in programs to assist her in obtaining housing and employment.

The goal was ultimately changed to adoption rather than reunification because Mother became completely non-compliant with the reunification plan in late 2012 and 2013. Mother stopped pursuing a relationship with S.R.T.; visits were inconsistent and Mother refused to participate in family therapy with S.R.T. Mother was discharged from ARC for non-compliance, refused a second chance at the program when it was offered to her, and failed to participate in the Shelter Care Plus program. Mother cannot blame DHS for her failure to avail herself of the programs and services offered to

her. *See In re R.T.*, 778 A.2d 670 (Pa. Super. 2001) (indicating that agencies are not required to provide services indefinitely where parent is unwilling or unable to apply instructions received). Moreover, the trial court made findings at several proceedings for Mother and S.R.T., including the termination hearing, that DHS made reasonable reunification efforts. We discern no reason to disturb these findings.

Mother also claims that DHS did not sustain its burden of presenting clear and convincing evidence of grounds for termination. In support of this argument, Mother asserts that she had appropriate visits with S.R.T., participated in mental health services, completed a parenting class, and looked for jobs. Mother argues that she "made positive changes in her life and was near completion of her goals. Therefore, [DHS] failed to prove 23 Pa.C.S.A. §[§] 2511 (a)(1), (2), (5), and (8)." Brief for Appellant, at 17.

Mother's claim that she was "near completion of her goals" at the time DHS filed the petition to terminate Mother's parental rights is completely unfounded. While Mother allegedly attended mental health treatment, she provided no documentation of this treatment to the court and failed to obtain a court-ordered bonding evaluation. Likewise, no evidence was presented to demonstrate that Mother's mental health had been stabilized. Mother's visits with S.R.T. may have been appropriate, but they were not consistent; she missed approximately two-thirds of her scheduled visits in 2013. Mother indicated the lack of consistency occurred in part because she was babysitting another child. Moreover, Mother had been permitted to

have unsupervised visits previously, but regressed to supervised visits prior to the filing of the termination petition.

Mother repeatedly refused to utilize services to obtain housing, employment, and financial stability to provide for an appropriate environment for S.R.T. At the termination hearing, Mother indicated she was sleeping on the floor at her sister's house. She also stated that she was in the process of reapplying for Social Security Income (SSI) since she was previously denied coverage, and her welfare benefits would cease if she did not apply for SSI. Despite applying for SSI benefits, Mother readily admitted her ability to work. However, Mother has not worked since 2001.

While Mother completed parenting classes prior to January 2010, DHS presented evidence that Mother continued to lack appropriate parenting practices. Despite suggestions to bring nutritious food to S.R.T. at visits as a response to S.R.T.'s failure to thrive issues, Mother failed to do so. Mother was made aware of S.R.T.'s medical appointments but did not attend them. Mother was unaware of the name of the school S.R.T. attended. Additionally, Mother remained in communication with Father, creating the possibility that S.R.T. could have further unsupervised exposure to Father at some point.

Overall, Mother's inability to recognize Father's sexually abusive behavior, difficulty following through with parenting recommendations, failure to obtain a bonding evaluation and provide proof of mental health treatment, dismissal from ARC, refusal to participate in Shelter Care Plus,

and failure to maintain consistent contact with S.R.T. demonstrate her lack of compliance with her service plan.  Significantly, Mother's failure to comply and to remedy her ability to perform parental duties was not for lack of time, since at the termination hearing S.R.T. had been in DHS custody for more than six of the eight years of her life.

Ultimately, Mother's lack of compliance is indicative of both a failure to perform her parental duties and an inability to remedy the situation to provide for S.R.T.'s essential needs. As the trial court noted, "Mother still need[ed] to acquire sufficient parental skills, [obtain] appropriate housing [and] a job, complete a drug and alcohol program, and overcome her major depression disorder to put herself in a position to care for the Child."  Trial Court Opinion, 2/9/2015, at 9.  Accordingly, the trial court properly terminated Mother's parental rights under sections 2511(a)(1) and (a)(2).[6] *See Commonwealth v. Arnold*, 665 A.2d 836, 840 (Pa. Super. 1995) (finding termination of parental rights appropriate where mother was continually unable to improve financial and residential condition, was uncooperative with DHS attempts to assist her, and failed to visit child consistently.)

---

[6] We need only agree with trial court's decision as to any one subsection under section 2511(a) in order to affirm termination of parental rights. *In the Interest of B.C.*, 36 A.3d 601, 606 (Pa. Super. 2012)

Section 2511(b) requires a determination regarding whether termination best serves the developmental, physical, and emotional needs and welfare of the child.

> Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of a child. . . . [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, . . . the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012) (citations omitted).

Here, the trial court specifically found a lack of a bond between Mother and S.R.T. and that S.R.T would not suffer irreparable harm if Mother's rights were terminated. *See* Trial Court Opinion, 2/9/15, at 10. In particular, S.R.T. desired to return to her foster parent at the conclusion of visits with Mother, knew that she would be safe with her foster parent, and expressed a desire not to visit with Mother.

Moreover, the record shows that S.R.T.'s bond with her foster parent is strong, and S.R.T. has resided with the same individual since placement. S.R.T. refers to her foster parent as "Mommy" and would prefer to live with her rather than Mother. We agree with the trial court that "[i]t is in the best interest of the Child to be adopted" and that "Child has been in foster care for too long and needs permanency." Trial Court Opinion, 2/9/15, at 10; *see In re K.Z.S.*, 946 A.2d 753, 764 (Pa. Super. 2008) (no parent-child

bond worth preserving where child has been in foster care most of child's life and result is attenuated bond with parent).

Accordingly, termination of Mother's parental rights promotes S.R.T.'s needs and welfare under section 2511(b), and S.R.T. would suffer no detriment from permanently severing her connection with Mother.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/6/2015