J-S70045-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: A.L.A.-A., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.A., FATHER | |
| | No. 1114 EDA 2015 |

Appeal from the Order Entered March 17, 2015
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000731-2013
FID: 51-FN-3413-2011

\*\*\*\*\*

| | |
|---|---|
| IN THE INTEREST OF: A.J.A., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.A., FATHER | |
| | No. 1115 EDA 2015 |

Appeal from the Order Entered March 17, 2015
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000732-2013
FID: 51-FN-3413-2011

BEFORE:  DONOHUE, J., LAZARUS, J., and PLATT, J.[*]

MEMORANDUM BY LAZARUS, J.:　　　　　**FILED NOVEMBER 06, 2015**

---

[*] Retired Senior Judge assigned to the Superior Court.

J.A. (Father) appeals from the order of the Court of Common Pleas of Philadelphia County that involuntarily terminated his parental rights as to his children, A.L.A.-A. (born April 2002) and A.J.A. (born September 2003).[1] After careful review, we affirm.

The trial court stated the facts of this matter as follows:

> On April 10, 2012, [the Department of Human Services of Philadelphia County ("DHS")] received a General Protective Services ("GPS") report alleging that on April 6, 2012, J.S. (father of children's one other sibling) evicted [the children and Mother] from his home. The GPS report also alleged that Mother failed to retrieve children from school at the end of the day on April 10, 2012, because she had been detained by police regarding an altercation between Mother and J.S., which resulted in Mother cutting J.S. with a knife and Mother throwing a brick through J.S.'s home and car windows. [A.L.A.-A.] witnessed this altercation. The GPS report also alleged that the children were in a deplorable living situation, exposed to extensive domestic violence, were not properly being cared for, and Mother and J.S. were using drugs. The GPS report was substantiated. DHS . . . placed the children in foster care. . . . Father's whereabouts were unknown until mid-late 2012.

> On May 14, 2012, an initial Family Service Plan ("FSP") was developed for Mother and Father. Father's objective was to make his whereabouts known to DHS. There was no contact from Father until mid-late 2012 when Father made his whereabouts known to DHS, and at that time FSP and Individual Service Plan ("ISP") objectives were established for Father. The objectives established for Father were to maintain contact with DHS and the agency; to maintain contact with children through regularly attended visits; to attend FSP and ISP meetings in order to understand the nature of the case and what goals were expected; to present to the Clinical Evaluation Unit ("CEU") and Behavioral Health Services ("BHS") due to domestic violence and

_____

[1] Mother's parental rights were terminated involuntarily on September 19, 2014. She is not a party to this appeal.

possible drug use; and to maintain suitable housing. These objectives remained the same through the life of this case and Father was aware of his objectives because he was notified in both English and Spanish, he was provided an interpreter during meetings, and he was entirely compliant for several weeks after the objectives were initially established. In early 2013, Father stopped maintaining contact with DHS and Father was found non-compliant with his FSP objectives on January 15, 2013[,] and again on April 2, 2013. Father failed to engage in a parenting class or complete drug and alcohol or mental health counseling. Additionally, although weekly visits were made available to him, Father only participated in a total of four visits in 2012. Father also had one visit with children in 2013, but stopped coming to visits. Father did not attend any visits or meetings again until an ISP meeting on February 18, 2015, at which time he did not provide any documentation as to why he was non-complaint with his ISP or FSP objectives. Due to Father not visiting, [A.J.A.] was affected tremendously. Even the therapist attempted to reach out to Father, but to no avail. During a February 18, 2015 ISP meeting, Father purposefully avoided any contact with [A.J.A.,] who was in the same room as Father. There was no exchange between Father and [A.J.A.] on that day. As to [A.L.A.-A.], Father denies paternity and refuses to sign for her medical treatment.[2] Father has been given the opportunity to sign [a form to] voluntarily relinquish his parental rights, but refuses, and also refuses to comply with an order for a paternity test. Throughout the time Father has appeared he always has been provided with a Spanish interpreter. At no time did Father indicate he was confused or did not understand what he was supposed to do in order to achieve his goals.

Trial Court Opinion, 7/17/15, at 1-3.

_____

[2] A.L.A.-A. has severe mental health problems that have required involuntary hospitalization. Because Father will not authorize A.L.A.-A.'s treatment, it has been necessary to obtain a court order to get her the treatment she requires.

DHS filed a petition to involuntarily terminate Father's parental rights on December 30, 2013, pursuant to 23 Pa.C.S. §§ 2511(a)(1), (2), (5), (8)[3]

_____

[3] Section 2511(a) provides, in relevant part:

> (a) **General rule.**-- The rights of a parent in regard to a child may be terminated after a petition is filed on any of the following grounds:
>
> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties;
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent;
>
> . . .
>
> (5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.
>
> . . .
>
> (8) The child has been removed from the care of the parent by the court or under voluntary agreement with an agency, twelve months or more have elapsed from the date of the removal or placement, the conditions which led to the removal or placement

*(Footnote Continued Next Page)*

and (b)[4] of the Adoption Act.[5]  Father's parental rights were terminated on

March 17, 2015.  This timely appeal followed.[6]

Father raises the following issues for our review:

1. Whether the evidence was sufficient to establish [Father] had evidenced a settled purpose of relinquishing parental claim, or having refused or failed to perform parental duties.

2. Whether the evidence was sufficient to establish that [Father] had refused or failed to perform parental duties, caused children to be without essential parental care, that conditions having led to placement had continued to exist, or finally that any of above could not have been remedied.

Brief for Appellant, at 5.

It is well established that:

In a proceeding to terminate parental rights involuntarily, the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.  The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and

_(Footnote Continued)_ ————————————

of the child continue to exist and termination of the parental rights would best serve the needs and welfare of the child.

23 Pa.C.S. § 2511(a).

[4] Section 2511(b) provides in relevant part:  "The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child."  23 Pa.C.S. § 2511(b).

[5] 23 Pa.C.S. §§ 2101-2938.

[6] We note that though a timely notice of appeal was filed, the trial court provided the certified record well beyond its due date.  Additionally, Father and DHS each requested and received extensions to file their briefs.  As a result, this matter's panel listing has been delayed for multiple months.

convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." It is well established that a court must examine the individual circumstances of each and every case and consider all explanations offered by the parent to determine if the evidence in light of the totality of the circumstances clearly warrants termination.

*In re Adoption of S.M.*, 816 A.2d 1117, 1122 (Pa. Super. 2003) (citation omitted). *See also In re C.P.*, 901 A.2d 516, 520 (Pa. Super. 2006) (party seeking termination of parental rights bears burden of proving by clear and convincing evidence that at least one of eight grounds for termination under 23 Pa.C.S. § 2511(a) exists and that termination promotes emotional needs and welfare of child as set forth in 23 Pa.C.S. § 2511(b)).

We review a trial court's decision to involuntarily terminate parental rights for an abuse of discretion or error of law. *In re A.R.*, 837 A.2d 560, 563 (Pa. Super. 2003). Our scope of review is limited to determining whether the trial court's order or decree is supported by competent evidence. *Id.*

In his first issue, Father asserts that the evidence was insufficient to terminate his parental rights pursuant to section 2511(a)(1). Under this section, parental rights may be terminated based upon relinquishment or failure to perform parental duties in the six months prior to the filing of the termination petition. However,

[a]lthough it is the six months immediately preceding the filing of the petition that is most critical to the analysis, the court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider

all explanations offered by the parent facing termination of his parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re K.Z.S.*, 946 A.2d 753, 758 (Pa. Super. 2008) (citations and quotation marks omitted).

Father asserts that he loves A.J.A. and wishes "to remain as a significant part of [A.J.A.'s] life.[7] Any failure to visit, . . . may be inferenced to communication problems." Brief for Appellant, at 11. Father argues that since he saw A.J.A. once in the six months preceding the filing of the termination petition, he did not demonstrate an intent to relinquish his parental rights or fail to perform his parental duties.

The record reveals that once Father's whereabouts became known and he initially met with DHS, the entirety of his efforts to be reunited with Children consisted of four visits in 2012, one visit in 2013, and attendance at one ISP meeting in February 2015.[8] Aside from the sole visit in 2013, Father assumed no parental duties in the six months preceding the filing of the termination petition. Prior to that period, Father visited Children a few times but stopped consistently meeting with DHS and Children nearly a year

_____

[7] Father makes no argument that he wishes to be involved in A.L.A.-A.'s life.

[8] At the February 2015 ISP meeting, Father had an opportunity to interact with A.J.A. but avoided doing so. At the termination hearing, Father stated that this was because "I was not under the knowledge that I was to see [A.J.A.] . . . [A] year had passed since I had seen him, and I have gained weight, so possibly, he didn't even recognize me." N.T. Termination Hearing, 3/17/15, at 57.

prior to the filing of the petition. He provided no monetary support, food, or clothing, and he failed to engage in a parenting class or to complete drug and alcohol or mental health counseling. Though Father may not have the intent to relinquish his parental rights, he has almost completely failed to perform any parenting duties over the past three years.

Father provides no reasons for his failure to parent his children other than that he had difficulty in maintaining the visitation schedule because of his limited ability to communicate in English. We note that "the court must consider the barriers faced by parents to exercising their parental rights. [However, t]he parent must exhibit reasonable firmness in attempting to overcome the barriers or obstructive behavior of others." *In re K.C.W.*, 689 A.2d 294, 299 (Pa. Super. 1997). A limited ability to communicate in English is a potential barrier parents face in exercising their rights. *See In re P.S.S.C.*, 32 A.3d 1281, 1286 (Pa. Super. 2011) (for Spanish-speaking father without an interpreter, services ordinarily considered to be reasonably available were "simply not 'available' in light of the language barrier"). Here, however, Father was provided with a Spanish interpreter at DHS meetings and in court. Nothing in the record reflects his failure to understand or indicates that he asked for clarification. Thus, we find that Father did not demonstrate "reasonable firmness" in attempting to overcome this alleged barrier to exercising his parental rights. *K.C.W.*, *supra*.

Father also asserts that the evidence was insufficient under section 2511(a)(2) to show that he caused Children to be without essential parental

care, that the conditions that led to placement continue to exist, or that these issues cannot be remedied. These claims are belied by the record. Children had been in foster care for 35 months at the time of the termination hearing, and during that time, Father provided no care to Children other than attending a handful of visits. Father actively failed to provide parental care by refusing to authorize necessary mental health treatment for A.L.A.-A. Father has been absent for much of Children's lives; had he been present, Children may have been able to be placed with him when they were removed from Mother's care. Father continues to be absent by failing to visit. Thus, the conditions leading to Children's foster care placement continue to exist.

Father's lack of compliance with DHS' objectives and failure to have any significant involvement with Children over the period of time they have been in foster care indicates not only a failure to perform parental duties and provide for Children, but also an inability to remedy the situation. ***See K.Z.S.***, ***supra*** at 758 ("parents are required to make diligent efforts toward the reasonably prompt assumption of full parental responsibilities. A parent's vow to cooperate, after a long period of uncooperativeness[,] . . . may properly be rejected as untimely or disingenuous"); ***see also Commonwealth v. Arnold***, 665 A.2d 836, 840 (Pa. Super. 1995) (termination of parental rights appropriate where mother was continually unable to improve financial and residential condition, was uncooperative with DHS attempts to assist her, and failed to visit child consistently.)

- 9 -

Accordingly, the trial court properly terminated Father's parental rights under sections 2511(a)(1), (a)(2),[9] and (b).[10]

Order affirmed.

_____

[9] We need only agree with trial court's decision as to any one subsection under section 2511(a) in order to affirm termination of parental rights. **In the Interest of B.C.**, 36 A.3d 601, 606 (Pa. Super. 2012).

[10] Though Father did not raise a claim under section 2511(b), we note that it is in Children's best interest that Father's parental rights be terminated. In making this determination, "intangibles such as love, comfort, security, and stability are involved[.] . . . [T]he trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child." **In re K.M.**, 53 A.3d 781, 791 (Pa. Super. 2012). Here, what little contact Father has had with Children has been inconsistent and has not supported a strong bond between Father and Children. Father admitted as much when he indicated that perhaps A.J.A. could not recognize Father when they had not seen each other for over a year. Father apparently wants no relationship with A.L.A.-A, as indicated by his denial of paternity and failure to appropriately address her mental health needs. Additionally, A.J.A. has a strong bond with his pre-adoptive foster mother, and they share a parent-child relationship. The foster mother would consider adopting A.L.A.-A. if her mental health stabilizes. Terminating Father's parental rights regarding A.L.A.-A. would facilitate such stabilization. Likewise, terminating Father's parental rights as to A.J.A. would enable A.J.A. to gain permanence and stability. Thus, we find that the relationship between Father and Children can be severed without detrimental effects. **K.M.**, **supra**.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>11/6/2015</u>