J-S18016-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: P.R.C., H.B.C., III, AND J.J.C. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| . | |
| APPEAL OF: H.B.C., JR. | |
| | No. 1378 MDA 2015 |

Appeal from the Decree July 10, 2015
In the Court of Common Pleas of Lancaster County
Orphans' Court at No(s): 2462 of 2014,
2463 of 2014, 2464 of 2014

BEFORE: BOWES, J., LAZARUS, J., and STRASSBURGER, J.[*]

MEMORANDUM BY LAZARUS, J.:                **FILED FEBRUARY 12, 2016**

H.C. (Father) appeals from the order of the Court of Common Pleas of Lancaster County involuntarily terminating his parental rights to his children, P.R.C. (born December 2006), H.B.C., III (born July 2008), and J.J.C. (born October 2009).[1]  After careful review, we affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] The trial court terminated Father's parental rights in a single order, which was entered on the separate docket for each child.  Where one or more than one order resolves issues arising on more than one docket, an appellant must file separate notices of appeal from each order.  *See* Official Note to Pa.R.A.P. 341.  However, we note that if Father had filed separate appeals from the decision as to each child, those appeals would have been consolidated.  *See* Pa.R.A.P. 513.  Thus, we address Father's appeal on the merits as to all three Children.

The trial court stated the facts and procedural history as follows:

This matter was initiated on December 3, 2014[,] when the Lancaster County Children and Youth Social Service Agency (the Agency) filed a [p]etition asking for termination of H.C.'s parental rights to his three children. . . . The petition was brought pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (a)(2), (a)(5), and (a)(8).[2] On the same day, a preliminary decree was issued

_____

[2] Section 2511(a) of the Adoption Act provides, in relevant part:

(a) **General rule.** – The rights of a parent in regard to a child may be terminated after a petition is filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties;

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent;

. . .

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

. . .

*(Footnote Continued Next Page)*

scheduling a [t]ermination hearing for January 26, 2015.[3] On January 26, the matter was continued to March 30, 2015[,] and the record of the [j]uvenile [c]ourt [p]roceedings were incorporated into the [t]ermination of [p]arental [r]ights [p]roceedings. On March 12, 2015, the March 30 [t]ermination hearing was continued to April 27, 2015. The matter was not heard that day, and was rescheduled for June 29, 2015[,] and then to July 8, 2015, when the hearing was completed. On July 10, 2015, the [c]ourt issued a [d]ecree terminating Father's rights to [the Children].

The C. family, H. (Father) and B. (Mother)[,] first came to the attention of the Lancaster County Court on August 30, 2013, when the three C. children were placed by [c]ourt [o]rder in the custody of the Agency after a shelter care hearing. The Agency had taken custody on August 29, [2013,] after learning of the children from the local police who had responded to a report of domestic violence and found that the C. home was in deplorable condition. There was no electricity. The children were using buckets as toilets, because there was no functioning bathroom. There was mold in the attic, dog feces everywhere in the house, as well as an infestation of roaches. At a hearing on September 30, 2013, the children were found to be dependent and were placed in foster care with a goal of reunification with their parents. An October 1st, 2014 parenting capacity psychological evaluation for Father resulted in recommendations for parenting classes, participation in couples' counseling, participation in a domestic violence evaluation, at least 26 one[-]hour individual therapy sessions, and anger management counseling. This evaluation took place more than a year after the children's

_(Footnote Continued)_ _____

(8) The child has been removed from the care of the parent by the court or under voluntary agreement with an agency, twelve months or more have elapsed from the date of the removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of the parental rights would best serve the needs and welfare of the child.

23 Pa.C.S. § 2511(a).

[3] Mother's parental rights were terminated on January 26, 2015, and she did not file an appeal.

placement because Father failed to show up for the first three appointments that were made for him. After the evaluation, Father did not become involved in individual therapy or anger management counseling. He did nothing concerning couples counseling. Although he was referred for a domestic violence evaluation, he did not attend. He did not even call for an appointment. No parenting class referral has been made for Father because the Agency was waiting for his mental health and/or domestic violence counselors to recommend that he was ready for parenting instruction. His employment has been spotty, and although at the time of the last hearing he had reported that he was working, he had not provided any documentation of employment. He did not have a residence suitable for the children. He did not cooperate in providing necessary information to the Agency. He professed confusion with what was expected of him, blaming the Agency's lack of availability and provision of misinformation. He had rather convoluted explanations for the condition of the house the day the children were taken and for other aspects of the situation. He refused to take responsibility for his dilemma, preferring to blame the Agency[,] which he said was just trying to keep his children from him. In short, Father would not only not accept responsibility, he refused to comply with the requirement of his plan. During the children's placement, Father visited with them only three times during July and August of 2014. As of the hearing on January 26, 2015, he had not seen them for five months. During that time, he had not asked for contact with them, or even inquired about them. The court found Father's testimony to be not credible.

Additionally, the Agency had received a report from Kentucky about drug and alcohol concerns connected to Father. An Agency caseworker also reported that she could not have a phone conversation without Father screaming angrily at her and reported other instances where Father was quick to become unreasonably angry. There had been visitation with Father and the children at Bethanna [a private agency]; Father's temper created safety concerns and visits were moved to the Agency office. There was also an issue of domestic violence; Mother had applied for a [p]rotection from [a]buse order, although she denied abuse to the police.

The children showed fear of Father before visits; [H.B.C., III] in particular was upset and was urinating on himself prior to visits. The children also reported that they had witnessed domestic

violence between their parents and that physical discipline was used on them.

Trial Court Opinion, 9/8/15, at 1-4 (citations and footnotes omitted).

Father filed a timely appeal, in which he raises the sole issue of "[w]hether the trial court erred in terminating Father's parental rights[.]" Brief for Appellant, at 9.

It is well established that:

> In a proceeding to terminate parental rights involuntarily, the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so. The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." It is well established that a court must examine the individual circumstances of each and every case and consider all explanations offered by the parent to determine if the evidence in light of the totality of the circumstances clearly warrants termination.

*In re Adoption of S.M.*, 816 A.2d 1117, 1122 (Pa. Super. 2003) (citation omitted). *See also In re C.P.*, 901 A.2d 516, 520 (Pa. Super. 2006) (party seeking termination of parental rights bears burden of proving by clear and convincing evidence that at least one of eight grounds for termination under 23 Pa.C.S. § 2511(a) exists and that termination promotes emotional needs and welfare of child as set forth in 23 Pa.C.S. § 2511(b)).

Pursuant to section 2511(a)(1), parental rights may be terminated based upon relinquishment or failure to perform parental duties in the six months prior to the filing of the termination petition. However,

> [a]lthough it is the six months immediately preceding the filing of the petition that is most critical to the analysis, the court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re K.Z.S.*, 946 A.2d 753, 758 (Pa. Super. 2008) (citations and quotation marks omitted). As to section 2511(a)(2), the party seeking involuntary termination must prove: "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *Id.*

We review a trial court's decision to involuntarily terminate parental rights for an abuse of discretion or error of law. *In re A.R.*, 837 A.2d 560, 563 (Pa. Super. 2003). Our scope of review is limited to determining whether the trial court's order or decree is supported by competent evidence. *Id.*

Father asserts that reasonable efforts were not made to assist him in reunifying with Children, arguing that the Agency "blocked him from reunification." Brief for Appellant, at 17. Specifically, Father argues that the Agency fabricated a reason to change his visitation schedule from Saturday visits at Bethanna to visits at the Agency, where they must be scheduled during the week. Father claims that "he was repeatedly denied access by

the scheduling of visits during his working hours when the Agency knew employment was also a goal for Father to be reunited with his children." *Id.*

Contrary to Father's argument, the record indicates that visits were moved to the Agency from Bethanna as a result of Father's inability to control his anger. As one caseworker noted at the termination hearing, she and one of the Children's foster parents were concerned regarding Father's anger management:

> [Father] had a hard time having a conversation with me about screaming at me on the phone, and so the anger management became an issue, and for safety concerns we felt like it was best to bring the visits back to the Agency. And also, the children had started expressing fear of their father at that point.

N.T. Termination Hearing, 7/8/15, at 63. Moreover, our Supreme Court has held that an agency making "reasonable efforts" is not a requirement for termination under 23 Pa.C.S. § 2511(a)(2). *In re D.C.D.*, 105 A.3d 662, 673 (Pa. 2014). Thus, we find Father's attempt to blame the Agency for his own shortcomings to be without merit.

Additionally, while acknowledging that "he made little progress on his reunification plan," Father nevertheless argues that his situation "drastically improved from the time of placement to the time of termination." Brief for Appellant, at 17. We disagree.

As the trial court noted, and the record indicates,

Father did not comply with any aspect of the Agency's reunification plan,[4] fail[ed] to attend individual therapy and anger management classes [and] a domestic violence evaluation, had spotty employment, unsuitable housing and had failed to visit with his children for five months without making any attempt to arrange a visiting schedule, and the children have been in care for more than eighteen months.

Trial Court Opinion, 9/8/15, at 4-5.

Altogether, Father's history of domestic violence, anger management issues, and failure to perform parental duties over the relevant six-month period and throughout the children's lives indicates that involuntary termination is warranted pursuant to section 2511(a)(1). **K.Z.S.**, **supra**. Moreover, in considering the requirements for termination in section 2511(a)(2), Father's lack of progress regarding his reunification plan demonstrates that he is unlikely to be able to remedy his inability to provide the Children with appropriate parental care. **Id.**

Accordingly, the trial court properly terminated Father's parental rights under sections 2511(a)(1), (a)(2),[5] and (b).[6] **See Commonwealth v.**

_____

[4] Father completed a parenting capacity psychological evaluation in October 2014, after missing three previous appointments, and over a year after the Agency took custody of the Children.

[5] We need only agree with trial court's decision as to any one subsection under section 2511(a) in order to affirm termination of parental rights. **In the Interest of B.C.**, 36 A.3d 601, 606 (Pa. Super. 2012).

[6] Though Father did not raise a claim under section 2511(b), we note that it is in Children's best interest that Father's parental rights be terminated. In making this determination, "intangibles such as love, comfort, security, and stability are involved[.] . . . [T]he trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can
*(Footnote Continued Next Page)*

- 8 -

***Arnold***, 665 A.2d 836, 840 (Pa. Super. 1995) (finding termination of parental rights appropriate where mother was continually unable to improve financial and residential condition, was uncooperative with DHS attempts to assist her, and failed to visit child consistently.)

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn, Esq._
Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/12/2016

---

*(Footnote Continued)*

be severed without detrimental effects on the child." ***In re K.M.***, 53 A.3d 781, 791 (Pa. Super. 2012). Here, what little contact Father has had with Children has been inconsistent and has not supported a strong bond between Father and Children. Instead, visits with Father have caused the Children to exhibit fear. The record indicates that H.B.C., III and J.J.C. are in the same foster home and are close to their foster mother. P.R.C. also "loves" her foster home and wants to stay there. Thus, we find that the relationship between Father and Children can be severed without detrimental effects. ***Id.***