J-S66016-16
J-S66017-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: L.A., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: H.A., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 621 MDA 2016 |

Appeal from the Decree Entered March 18, 2016
In the Court of Common Pleas of Cumberland County
Juvenile Division at No(s):  CP-21-DP-0000012-2015

| | | |
|---|---|---|
| IN RE: ADOPTION OF: L.A., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: H.A., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 622 MDA 2016 |

Appeal from the Order Entered March 18, 2016
In the Court of Common Pleas of Cumberland County
Orphans' Court at No(s):  14 Adoptions 2016

BEFORE:  BOWES, J., PANELLA, J., and JENKINS, J.

JUDGMENT ORDER BY PANELLA, J.          **FILED SEPTEMBER 15, 2016**

Appellant, H.A. ("Father") appeals[1] from the decree and order entered

on March 18, 2016, which, respectively, involuntarily terminated his parental

rights to his female child, L.A., ("Child"), born in January 2015, pursuant to

---

[1] We consolidated these appeals *sua sponte*.

the Adoption Act, 23 Pa.C.S.A. § 2511(a)(2), (5), and (b), and changed the permanency goal to adoption pursuant to the Juvenile Act, 42 Pa.C.S.A. § 6351.[2]

The trial court aptly set forth the factual background and procedural history of this appeal, which we adopt herein. *See* Trial Court Opinion, 5/26/16, at 1-8. On February 29, 2015, Cumberland County Children and Youth Services ("CYS") filed a petition to involuntarily terminate Father's parental rights. The trial court held a hearing on March 16, 2016, and terminated Father's rights on that same date. Father timely filed notices of appeal and concise statements of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

Father asserts the trial court erred in finding: 1) CYS presented evidence that met its burden of proof; 2) Child's best interest would be served by termination of Father's parental rights; and 3) Child's best interests would be served by changing the goal to adoption and terminating Father's parental rights, when the evidence indicated that the original reasons for Child's placement no longer exist or have been substantially eliminated. Father argues he has met the most significant goal of his family

---

[2] In a separate decree entered March 18, 2016, the trial court voluntarily terminated the parental rights of Child's mother, J.H. ("Mother"). Mother has not challenged the termination of her parental rights, nor is she a party to this appeal.

service plan, and now is able to provide stable housing for Child, with the assistance of his sister, who previously presented as a resource for Child.

As this Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of § 2511(a), we focus on subsections (a)(2) and (b). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). With regard to the sufficiency of the evidence to support the termination under those subsections of the Adoption Act and the change of goal under the Juvenile Act, based on our review of the testimonial evidence, we discern no abuse of discretion or error of law by the trial court. *See In re Adoption of S.P.*, 47 A.3d 817, 826-27 (Pa. 2012) (setting forth the standard of review for termination and goal change).

Regarding § 2511(b), Father failed to visit Child, and his visits were discontinued. Thus, although the trial court did not expressly find an absence of a bond between Father and Child, Child has been in placement for nearly the entirety of her life, so the evidence supports such a finding. *See In re K.Z.S.*, 946 A.2d 753 (Pa. Super. 2008) (stating that no bond that is worth preserving is formed between a child and parent where the child is in foster care for most of the child's life, and the resulting bond with the parent is attenuated). Child's guardian *ad litem* ("GAL") observed Child in the home with the pre-adoptive kinship foster parents, and testified Child appeared to be very bonded with the foster parents, and the household

seemed appropriate for Child. The foster mother testified that Child is bonded to the other kinship foster child in the home. The trial court thoroughly discussed the best interests of Child in its opinion. ***See In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013). Accordingly, we affirm the decree and order based on the trial court's May 26, 2016 opinion.

Decree and order affirmed. Motion to consider brief granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/15/2016

IN THE INTEREST OF L.A,　　　: IN THE COURT OF COMMON PLEAS OF
a Minor,　　　　　　　　　　　: CUMBERLAND COUNTY, PENNSYLVANIA
Appeal of H.A., Father　　　　　: NO. CP-21-DP-0000012-2015
Born 1/09/2015　　　　　　　　:

IN THE ADOPTION OF　　　　　: IN THE COURT OF COMMON PLEAS OF
L. A.,　　　　　　　　　　　　: CUMBERLAND COUNTY, PENNSYLVANIA
Born 1/09/2015　　　　　　　　: ORPHAN'S COURT DIVISION
　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　· : NO. 14 ADOPTIONS 2016

## IN RE: OPINION PURSUANT TO PA.R.A.P. 1925

Peck, J., May 25, 2016 --

On March 30, 2015, L.A. was adjudicated dependent and placed with kinship caregivers.[1] At a hearing held on September 10, 2015, the Agency's request for a finding of aggravated circumstances was granted and the Agency was not directed to continue with reunification services.[2] A Goal Change and Termination of Parental Rights Hearing was scheduled for March 16, 2016.[3] On February 26, 2016, Cumberland County Children and Youth Services (CCCYS, or the Agency), by and through its solicitor, Lindsay D. Baird, Esquire, filed a Petition for Involuntary Termination of Parental Rights of Appellant, H███ A█H████, in regards to L.A.[4] A hearing was held regarding the Petition on March 16, 2016.[5] After the hearing and receipt of evidence, this Court issued a Final Decree terminating the parental rights of Appellant on March 16, 2016.[6] On April

---

[1] Report of Intention to Adopt, 03/08/2016

[2] CCCYS Exhibit 1, Judicial Conference Report, 2/10/2016.

[3] Id.

[4] On March 7, 2016, the Agency filed an Amended Motion to correct an error in the original Order regarding the time scheduled for the hearing. The Court issued an Amended order reflecting the correct time on March 8th. The original Order gave the time of the hearing as 3:30pm, while the Amended Order gave the correct time of 1:30pm. See RE: Petition for Involuntary Termination of Parental Rights of the Alleged Appellant, H███ A███████, Under Section 2512 of the Adoption Act; Amended Order of the Court, March 16, 2016. (Peck, J.)

[5] CCYS filed the same motion with regard to Mother's parental rights simultaneously. After a hearing, Mother's rights were terminated. She does not contest the termination. See RE: Petition for Involuntary Termination of Parental Rights of Mother, J████ H██, Order of the Court, March 8, 2016. (Peck, J.)

[6] RE: Petition for Involuntary Termination; Final Decree, March 16, 2016. (Peck, J.)

1

15, 2016, Appellant filed a Statement of Errors Complained of on Appeal, complaining that:

1. This Honorable Court erred as a matter of law and abused its discretion in changing the goal for this child to adoption and terminating Appellant's parental rights in that Appellant is able to provide the child with essential parental care, control, and subsistence.

2. The Honorable Court erred as a matter of law and abused its discretion in terminating Appellant's parental rights in that the conditions which led to the removal or placement of the child no longer existed or were substantially eliminated.

3. This Honorable Court was in error in determining the best interest of the child would be served by terminating Appellant's parental rights.[7]

Pursuant to Pa.R.A.P. 1925(a), this opinion is written in support of this Court's judgment.

## STATEMENT OF FACTS

Appellant is the biological father of L.A., born January 9, 2015. On March 30, 2015, CCCYS attempted to provide in-home services and found that Mother had overdosed on heroin in the presence of L.A. and other children.[8] Appellant was not present at the overdose but was in a relationship and living with mother at the time.[9] Appellant initially engaged with CCCYS and presented himself as a resource, but he was not able to provide stable housing or ensure L.A.'s safety.[10] There were also questions about his ability to provide supervision and concerns about domestic violence between

---

[7] RE: Petition for Involuntary Termination; Appellant's Statement of Errors Complained of on Appeal, April 15, 2016.

[8] CCYS Exhibit 1, Judicial Conference Report, 2/10/2016; Transcript of Proceedings, In Re: Petition for Involuntary Termination of Parental Rights, March 16, 2016 (Peck, J.) (hereinafter "N.T., 3/16/2016 at ___") at 12.

[9] N.T., 3/16/2016 at 12.

[10] Id., CCYS Exhibit 1, Master's Recommendation – Permanency Review, 6/1/2015. Appellant, Mother, L.A., and other children were living in a hotel at the time of the overdose and placement.

2

him and Mother.[11] On March 30, 2015, L.A. was placed in the Bair Foundation formal kinship home of her maternal aunt, the home of S████ H██ and J████ S█████████, H██'s fiancé.[12]

At a hearing held on September 10, 2015, CCCYS's request for a finding of aggravated circumstances with respect to Mother was granted and the Agency was directed not to continue with reunification services.[13] A Permanency Review was held on November 2, 2015.[14] The Master's Recommendation indicates that as of that date, Father had made no progress toward alleviating the circumstances which necessitated the original placement.[15] Father was incarcerated in Perry County prison during the review period and had not been in contact with the Agency.[16]

A Judicial Conference was held on February 4, 2016.[17] Appellant did not participate, though his attorney did appear.[18] At the conference, the Agency provided evidence that Appellant had not made progress on any of the objectives outlined in his permanency plan (also called a "service plan" or "family service plan").[19] The Agency recommended that it appeared safe and in L.A.'s best interest to remain in the care of S████ H██ and J████ S█████████.[20] Prior to the March 16, 2016, hearing, Hess and Stefanowicz filed a Report of Intention of Notice to Adopt.[21]

The Agency filed their Petition for Involuntary Termination of Parental Rights of Father, A██H████ on the basis of 23 Pa.C.S. Sections 2511 a(2), a(5), and a(8) on February 26, 2016. A Goal Change and Parental Termination of Rights hearing was held

---

[11] CCYS Exhibit 1, Judicial Conference Report, 02/10/2016.

[12] Id.

[13] Id.

[14] See CCYS Exhibit 1, Master's Recommendation-Permanency Review, 2/10/2016.

[15] Id. at 1.

[16] Id. at 3.

[17] At the Permanency Review Hearing on 3/16/2016, the Agency submitted the Judicial Conference Report presented at the Conference held on 2/4/2016. See CCYS Exhibit 1, Judicial Conference Report. CCCYS also petitioned to terminate Mother's rights; Mother consented and her rights were voluntarily terminated on 3/16/2016. In re Adoption of L. A., In re Petition for Involuntary Termination of Parental Rights, Final Decree, 3/16/2016.

[18] Id.

[19] Id.

[20] Id.

[21] N.T. 3/16/2016 at 20.

3

on March 16, 2016.[22] At the hearing, Ms. Amanda Sigrist, Agency caseworker, reported that she had no knowledge of Appellant making progress on any of the objectives included in Appellant's family service plan, which included: remaining drug and alcohol free; improving parenting skills; locating appropriate housing; maintaining contact with the child; completing domestic violence counseling; and cooperating with Children and Youth Services.[23] The Agency presented the following evidence with regards to each goal:

Remaining drug and alcohol free: Appellant tested positive for marijuana at the time of placement.[24] Between that test and the hearing date, Appellant had been called for three additional drug screens; he was a "no-call no-show" each time.[25] In March 2016, Appellant declined to provide Ms. Sigrist a drug sample and admitted to using marijuana in the preceding month.[26]

Improving parenting skills: Appellant was recommended to complete a program with the parenting TIPS service.[27] He completed an initial evaluation on November 20, 2015,[28] but did not respond to multiple attempts to contact him to begin regular participation in the TIPS program, which lasts ten sessions.[29] The TIPS evaluator also recommended Appellant undergo a full psychological evaluation, individual outpatient counseling, and possible medication management (Appellant was medicated while imprisoned in 2015).[30] Appellant had not followed through with any of these recommendations.[31]

Securing appropriate housing: Appellant was in prison for about three months between July and November 2015.[32] Ms. Sigrist testified that some time in the week

---

[22] See CCCYS Exhibit 1, Judicial Conference Report, 2/10/2016.

[23] N.T. 3/16/2016 pp 12-29; CCCYS Exhibit 3, Service Plan, Revised, 5/28/2015.

[24] N.T. 3/16/2016 at 12; CCCYS Exhibit 8, Drug Test Report, reported 4/1/2015.

[25] N.T. 3/16/2016 at 12, 25.

[26] Id. at 14.

[27] Id. at 15.

[28] CCCYS Exhibit 9, Psychological Evaluation, TIPS Program, 11/20/2015.

[29] CCCYS Exhibit 9, Letters from Deborah Bush to Appellant, 1/11/2016 and 1/24/2016.

[30] N.T. 3/16/2016 at 27-28.

[31] Id. at 15.

[32] Id. at 13.

4

before March 10, 2016, she was contacted by Appellant's sister, who stated that Appellant was not living with her at the time.[33] (The sister's address was the address the agency had on file for Appellant). The day before the hearing, on March 15, 2016, Appellant told Ms. Sigrist he was living with his sister and they were looking for a larger house.[34] Ms. Sigrist could not "confirm or verify [if the housing would be appropriate]" because it had not yet been located.[35]

Maintaining contact with the child: The child's kinship caregiver, S██████ H███, testified that when L.A. was first placed with her, Appellant contacted her to arrange visitation on an ad hoc basis, initially more than once a week, but that these visits decreased in frequency to less than once a week.[36] She stated that Appellant did not contact her for any reason while he was incarcerated.[37]

In June, 2015 concerns that Appellant was allowing Mother to be in the presence of the child while under the influence of drugs during his period of visitation led to a court order that all visitation was to be supervised from that point forward.[38] Ms. Sigrist testified that at this point, Appellant stated that if he could not have unsupervised visitation, he did not want visitation at all.[39] Subsequently, he did not respond to attempts to start supervised visitation through ABC (an Agency-approved service) in July, 2015.[40] Appellant did not have any visits with the child at all between June and November 2015.[41] Ms. Sigrist testified that Appellant was incarcerated for three months during this period.[42] Both Ms. Sigrist and S█████ H███ testified that Appellant did not communicate

---

[33] Id. at 14.

[34] Id. at 15.

[35] N.T. 3/16/2016 at 15. It is not clear from the record, but it seems that sister's current home would not be appropriate for L.A, or at least that Appellant believed it would not be. Ms. Sigrist testified that Appellant never specifically inquired as to whether his sister's home would be appropriate as a home for L.A. See Id. at 11-29.

[36] Id. at 32.

[37] Id.

[38] Id. at 17.

[39] N.T. 3/16/2016 at 17.

[40] Id.; See CCYS Exhibit 9, ABC STEPS Service Summary, initial referral date 7/24/15.

[41] N.T. 3/16/2016 at 29.

[42] Id. at 12.

with them while he was imprisoned.[43] Appellant did meet with Ms. Sigrist after his release from prison in November 2015 and started supervised visitation in December 2015.[44] Appellant had five visits with his child, non-consecutively because he missed one appointment. Appellant's last visit occurred on January 11, 2016.[45] However, after Appellant did not call and did not show up for an appointment on January 15, 2016.[46] Because it was the second appointment Appellant had missed without notifying ABC, visitation was suspended.[47] Appellant then showed up at ABC on January 25th, which would have been the date of his next visit had the visitation not been terminated, and spoke with an ABC staff member who told him he needed to contact the parent supervisor if he wished to restart visitation.[48] Ms. Sigrist testified that Appellant never contacted the supervisor and Appellant did not respond to letters from ABC or the Agency attempting to contact him regarding this matter.[49] Ms. Sigrist testified that Appellant did leave her a voicemail on January 29th, stating he was going to give her his new phone number, but the message disconnected without him leaving the number.[50] She then attempted to contact Appellant through letters, but did not receive any communication from Appellant until March 10, 2016.[51]

Completing Domestic Violence Counseling: Under the Service Plan initiated in February 2015, Appellant was recommended to complete the AMEND program for domestic violence counseling by June 1, 2015.[52] At the hearing on March 16, 2016, the

---

[43] Id. at 12, 32.

[44] Id. at 17-18.

[45] Id. at 22.

[46] Id. at 18, 22-23; CCCYS Exhibit 9, STEPS Service Summary.

[47] Id. at 18, 22-23; CCCYS Exhibit 9, STEPS Service Summary.

[48] Id. Appellant was scheduled for an appointment on January 18th, but the Appellant did not call or show up. Under ABC policy, his visitation was terminated after this second "no call no show". Appellant did show up for what would have been his next appointment, on January 25th, which was cancelled due to the termination, at which time the agency was closed due to a snow storm anyway. Id. at 22.

[49] Id. at 18; ABC terminated the visitation case on March 1, 2016 after not hearing from Appellant. CCCYS Exhibit 9, STEPS Service Summary.

[50] N.T. 3/16/2016 at 18.

[51] Id. at 23.

[52] CCCYS Exhibit 3, Service Plan, revised 5/28/2015 at F-4. Appellant and Mother had been in contact with the Agency prior to Mother's overdose on 3/28/2015, and Mother's parental rights to three older children were terminated in in March 2015. Id. at B-1.

Ms. Sigrist was not aware of any attempts by Appellant to complete the recommended domestic violence counseling.[53] Appellant was also scheduled to attend an anger management program through ABC on June 27, 2015, but did not appear at the class or contact the administrators.[54]

Communicating and Cooperating with CCYS:

Ms. Sigrist testified that Appellant's communication with them has been very inconsistent since the child's placement.[55] After some initial communications, the Agency received no communication from either Appellant of any of his family members between June and November 2015.[56] Appellant did meet with Ms. Sigrist in November 2015, at which time he testified that he intended to work toward making progress on all the goals in his service plan.[57] However, Ms. Sigrist testified that other than a single apparently incomplete voicemail, she received no communication from Appellant between December 2015 and March 10, 2016, despite her sending several letters and making several phone calls to that end.[58] Ms. Sigrist testified that the letters went to Appellant's sister's address, the last address the Agency had on file for him, and that she tried contacting him at several different phone numbers he had provided to the Agency.[59] Ms. Sigrist further testified that Appellant did contact her on March 10, 2016, and that she spoke with Appellant on March 15, 2016, the day before the hearing. (The context and substance of the second communication are not described in the record.)

Appellant's sister communicated with Ms. Sigrist in November 2016, initially presenting herself as a resource for the child.[60] However, the sister was not present when Ms. Sigrist went to her house for a scheduled home visit, and subsequently did not contact Ms. Sigrist again until shortly before the March 16, 2016.[61]

---

[53] N.T. 3/16/2016 at 18.
[54] CCCYS Exhibit 9, Failure to Complete Anger Management Program.
[55] N.T. 3/16/2016 at 12-13, 18.
[56] Id. at 26.
[57] Id. at 13.
[58] Id. at 12.
[59] Id. at 13.
[60] N.T. 3/16/2016 at 16.
[61] Id. at 16.

7

The Agency also presented additional evidence that at the time of the hearing Appellant had several active criminal cases. In the six months prior to the March 16, 2016 hearing, Appellant was charged with multiple crimes in two different jurisdictions.[62] This Court took judicial notice that Appellant was scheduled to appear for criminal trial in Cumberland County on March 16, 2016.[63] A review of the docket shows that Appellant is now scheduled for trial in Cumberland County in July, 2016.[64]

Testimony was also submitted regarding the child's current caregivers and living situation. Ms. Sigrist testified that L.A. is "doing very well in her current kinship home. She is very bonded and connected with both caregivers and also the other kinship children in the home."[65] L.A.'s guardian ad litem, Ms. Sheri Coover, Esq., testified that she had also observed the child in the home with Ms. H█ and Mr. S█████ and that the child appeared to be very bonded with them and that the household seemed appropriate for the child.[66] Ms. Coover concurred with the Agency's recommendation. Ms. H█ also testified.[67] Ms. H█ testified that: she and her fiancé love the child and desire to adopt the child; that she currently stays at home to care for the child; that L.A. is very bonded to another foster child in the home (also a kinship relative to Ms. H█); and that Ms. H█ has numerous other relatives in the area who are able to provide additional support for the child, including four sisters (apart from Mother), a grandmother, and an aunt.

Appellant did not testify on his own behalf and presented no witnesses or evidence.[68]

---

[62] CCCYS Exhibit 11, Cumberland County Court of Common Pleas Court Summary. Charges in Cumberland County include Receiving Stolen Property, Intentional Possession of a Controlled Substance, Use/Possession of Drug Paraphernalia, and, in a separate docket, Receiving Stolen Property; charges in Perry County include Burglary, Conspiracy to Commit Burglary, Criminal Trespass, and Theft by Unlawful Taking.

[63] N.T. 3/16/2016 at 21.

[64] Defense requested and received two continuances. Review of Docket Entries, Docket no. CP-21-CR-0002633-201, CP-21-CR-0002637-2015, searched 5/11/2016.

[65] N.T. 3/16/2016 at 19.

[66] Id. at 38.

[67] Id. at 30-37.

[68] See Id.

DISCUSSION

The Petitioner has alleged that the Court:

1. erred as a matter of law and abused its discretion in changing the goal for this child to adoption and terminating Appellant's parental rights in that Appellant is able to provide the child with essential parental care, control, and subsistence, and

2. erred as a matter of law and abused its discretion in terminating Appellant's parental rights in that the conditions which led to the removal or placement of the child no longer existed or were substantially eliminated, and

3. was in error in determining the best interest of the child would be served by terminating Appellant's parental rights.

We begin by addressing the standard of review applicable to the Appellant's claims. Pennsylvania appellate courts defer to the trial courts, "adher[ing] to the view that the trial court is in the best position to determine credibility, evaluate the evidence, and make a proper ruling." In re Adoption of Atencio, 650 A.2d 1064, 1066 (Pa. 1994). Absent any abuse of discretion or error of law, where the trial court's findings are supported by competent evidence, an appellate court must affirm the trial court even though the record could support the opposite result. In the Interest of R.J.T., 608 Pa. 9, 9 A.3d 1179, 1190 (Pa. 2010). Pennsylvania courts have held that "an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." In re Adoption of S.P., 47 A.3d 817, 826, (Pa. 2012) (internal citations omitted).

In Atencio, a case regarding involuntary termination of parental rights, the Supreme Court found that the Superior Court improperly vacated the trial's court's ruling where competent evidence supported the trial court's decision. In re R.I.S., 36 A.3d 567, 573 (Pa. 2011), citing In re Adoption of Atencio, 650 A.2d 1064. The Court reasoned that because the trial court reached its conclusion on the basis of competent evidence, the

9

Superior Court should not have disturbed the decision. This Court believes the principle set out in Atencio applies, and because competent evidence supports the trial court's decision, the ruling should stand.

### a. The Record Contains Competent Evidence Sufficient for this Court to Find the Goal Change Was in the Child's Best Interest

We first address Appellant's claim with regard to the goal change proceeding. Appellant has alleged the court abused its discretion or committed an error of law in finding that the goal change was in the child's best interest. Appellant has not alleged any facts to support his claim that the Court abused its discretion, and this Court is therefore unable to address it with specificity. The record contains no evidence that this court demonstrated manifest unreasonableness, partiality, prejudice or ill-will.

Nor has Appellant alleged any facts to support his claim that this Court erred as a matter of law on this issue. In a change of goal proceedings, the best interests of the child and not the interests of the parent must guide the trial court, and the burden is on the child welfare agency involved to prove that a change in goal would be in the child's best interest. In re D.P., 972 A.2d 1221, 1227, (Pa. Super. 2009). See also, In the Interest of R.J.T., 9 A.3d 1179, 1183-1184 (2010) (noting that the trial court correctly observed that it had a responsibility to look to the best interests of the child and not those of the child's parents in a change of goal proceeding); 42 Pa.C.S. § 6351(g) (setting forth matters to be determined in permanency planning). The best interest of the child standard requires the court "to give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b).

This Court finds competent evidence supports the ruling to change the family service plan goal of reunification to adoption. As listed, supra, substantial evidence was presented to support the Agency's petition. The Courts have stated that cooperating with the Agency and working to reach the goals set in a service plan are "necessary steps to supporting a parent child relationship" where a child has been adjudicated dependent. In re E.A.P., 944 A.2d 79, 83 (Pa. Super. 2008). Father did not maintain even minimal

10

communication with the Agency. Father had not made progress on any of the goals set for him in his Family Service Plan. In fact, no evidence was provided to this Court that would allow the Court to find that Appellant is able to provide the child with essential parental care, control, and subsistence.[69]

The Agency and kinship caretakers provided evidence the child is very bonded to her kinship caretakers and is provided a loving, safe, stable home. Ms. H██ testified that she provides full-time care for the child and another foster child, with whom the child is also bonded. Ms. H██ testified that she has an extended, supportive family network in the area. This Court notes the stability afforded to the child should she remain in the home where she has now received care for most of her young life. No evidence at all was given as to the state of the child's bond to her father, Appellant. Therefore, this Court finds clear and convincing evidence that it was in the best interest of the child to change the goal of the child's permanency plan from reunification to adoption.

b. The Record Contains Competent Evidence Sufficient for this Court to Determine that the Conditions Which Led to the Initial Placement Still Existed or Had Not Been Substantially Eliminated

Appellant's second argument is that the Court abused its discretion or committed an error of law because the conditions which led to the removal or placement of the child no longer existed or were substantially eliminated. Appellant essentially argues that the Agency has not met the statutory standard for involuntary termination set out under Pa.C.S. § 2511(a). We repeat that Appellant has not provided any facts to support his allegations, and our belief that none can be found in the record. This Court finds in the

---

[69] With regard to Appellant's past incarceration, the Pennsylvania Supreme Court has held that while incarceration alone shall not provide grounds for involuntary termination, an individual's parental duties are not tolled if that individual is incarcerated; rather it is incumbent upon the individual to use all resources available to them to continue a relationship with the child. In re Adoption of S.P. 47 A.3d 817, 828, citing In re Adoption of McCray, McCray, 331 A.2d 652 (Pa.1975). Generally, this has meant, at a bare minimum, continuing communication with or regarding the child. See, i.e.; Id.; In re R.I.S., 36 A.3d 567, 572 (Pa. 2011); Adoption of Baby Boy A., 517 A.2d 1244, 1246 (Pa. 1986). While the child is too young to communicate independently, the parties testified that Appellant did not communicate with either the Agency social worker or foster mother while he was incarcerated. N.T. 3/16/2016 at 12, 32.

record competent evidence that the conditions which led to the removal or placement of the child persist or have not been substantially eliminated.

When considering a petition for involuntary termination under Section 2511(a), the courts are to focus on the actions of the parent. In Re Adoption of C.L.G., 956 A.2d 999, 1008 (Pa. Super 2008)(*en banc*). Only once a statutory ground for termination under 23 Pa.C.S. § 2511(a) is met may the court proceed to consider whether the termination is in the best interests of the child under 23 Pa.C.S. § 2511(b). In re B.L.W., 843 A.3d 380, 384 (Pa. Super. 2004)(*en banc*). The fulfillment of any one subsection of § 2511(a) provides a threshold sufficient for the court to proceed. Id. The party seeking the termination of parental rights bears the burden of proving that grounds for termination exist by clear and convincing evidence. In re Adoption of Atencio, 650 A.2d 1064, 1066. Clear and convincing evidence is defined as testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. Id.

The Agency's Petition for Involuntary Termination is based on 23 Pa.C.S. § 2511(a)(2), (a)(5), and (a)(8). Section (a)(8) is only applicable where the child was placed at least twelve months prior to the hearing, and therefore does not apply here;[70] we will consider the Agency's petition under Sections (a)(2) and (a)(5) in turn. Section (a)(2) allows for involuntary termination of parental rights where there has been ongoing abuse and neglect. Parental rights may be involuntary terminated in cases of:

> [t]he repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent."

23 Pa.C.S. § 2511(a)(2). The courts have reasoned that a parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties. In re Adoption of S.P., 47 A.3d at 827. Furthermore, the courts have stated that a parent is required to make diligent efforts toward the reasonably prompt assumption of

---

[70] L.A. was placed on March 30, 2015; the involuntary termination hearing was held on March 16, 2016.

full parental responsibilities. In Re A.L.D., 797 A.2d 326, 337 (Pa. Super. 2002). A parent's vow to cooperate, after a long period of uncooperativeness, may properly be rejected as untimely or disingenuous. Id. at 340.

In the instant case, Appellant has repeatedly refused to make the efforts necessary to provide the child with essential parental care, control, or subsistence. Nor did Appellant make diligent efforts towards a reasonably prompt resumption of full parental responsibilities. Most glaring is Appellant's failure to make diligent efforts to take advantage of the visitation available to him. Shortly after the placement, Appellant actually told the Agency caseworker that, if it was to be supervised, he did not want to have any visitation with his daughter at all.[71] Because the child was still a non-verbal infant at this time, incapable of participating in phone calls or written communication, Appellant effectively chose to forgo all communication with his daughter. While Appellant did attempt to begin regular visitation in December 2015, those efforts were terminated by the supervising agency by January 2016 due to Appellant's failure to show up for two scheduled visits and failure to communicate with the supervising agency.[72] Ms. Sigrist testified that all Appellant would have had to do to reinstate the visit was to call the supervising agency; but by the time of the hearing on March 16th, 2016, almost two months later, he had not done so.[73] Appellant's other failures to comply with numerous service plan goals also reveal ongoing incapacity, neglect, or refusal to make efforts to provide essential parental, care control, and subsistence. Therefore, this Court finds the Agency has demonstrated by clear and convincing evidence that the statutory threshold for involuntary termination under Pa.C.S. § 2511(a)(2) was met.

We next turn to the ground for involuntary termination under Section 2511 (a)(5). Under this section, the courts may grant involuntary termination where:

> The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child

---

[71] N.T. 3/16/2016 at 17.

[72] Id. at 18, 22-23, 27.

[73] Id. at 18.

13

continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to removal or placement of the child within a reasonable time, and termination of the parental rights would best serve the needs and welfare of the child.

23 Pa.C.S. § 2511(a)(5).

Here, it is clear that L.A. was removed from parental care more than six months ago. As discussed *supra*, the Agency presented credible evidence that the conditions which led to the initial placement continue to exist. While the catalyst of the child's removal was Mother's overdose in presence of the child, the child was placed with kinship relatives, and not Appellant, on March 30, 2015 because he was not able to provide stable housing or ensure the child's safety.[74] These two conditions persisted, or the Agency could not confirm any alleviation of these conditions because of Father's lack of communication, at four different proceedings held between June 1, 2015 and February 4, 2016.[75] Ms. Sigrist repeated at the hearing on March 16, 2016 that the Agency could not confirm any progress by Appellant towards securing stable housing at that time.[76] Accordingly, this Court found clear and convincing evidence that the conditions which led to the original termination have not been eliminated, either substantially or entirely. The Agency's evidence also clearly shows that Appellant has not remedied those conditions since the placement almost twelve months previously, and has failed to utilize the services and assistance available to him to remedy those conditions. In light of Appellant's repeated failures to make progress toward any of the goals in his family service plan, this Court does not find that Appellant is likely to remedy those conditions within a reasonable time in the future.

Furthermore, while the conditions cited for removal of the child with regards to Appellant were initially limited to two concerns, regarding housing and safety, the Agency subsequently developed numerous other concerns related to Appellant's ability to

---

[74] CCCYS Exhibit 1, Master's Recommendation-Permanency Review, 6/1/2015
[75] See Id.; Judicial Conference Report, 9/11/2015; Master's Recommendation-Permanency Review, 11/13/2015; Judicial Conference Report, 2/10/2016.
[76] N.T. 3/16/2016 at 15.

14

care for his child and the Family Service Plan put in place other goals related to those concerns, as discussed, *supra*. The Agency has submitted credible evidence that Appellant made no progress towards most of the goals. With regards to his goal of maintaining contact with the child, Appellant did undertake visitation in late 2015. However, that progress was brief – Appellant consistently showed up for scheduled visitation no more than three times in a row, and it was terminated after just five sessions.[77] By the time of the hearing on March 16, 2016, the Agency reported he had made no progress towards this goal. Furthermore, while Appellant was evidently in contact with the Agency caseworker in the weeks before his hearing, the caseworker did not testify specifically to any statements made by Appellant with regards to his future plans for cooperation, and neither did Appellant himself testify. Even if Appellant had testified to any renewed commitment to the goals in his service plan, the courts may consider a parent's sudden effort to cooperate, coming after a long period of non-cooperation, as untimely or disingenuous. In Re A.L.D., 797 A.2d 326, 340 (Pa. Super. 2002). Therefore, the Agency has not only shown that the issues regarding lack of housing and safety persist, but that other conditions significantly detrimental to Appellant's ability to provide parental care, control and subsistence persist and are not likely to be remedied by Appellant within a reasonable period of time. The Agency has proven by clear and convincing evidence that the statutory grounds for termination under § 2511(a)(5) have been met. This Court is required to consider the best interests of the child, which this Court will now do.

c. The Record Contains Competent Evidence to Allow This Court to Find the Best Interest of the Child Would be Served by Granting the Petition for Involuntary Termination of Appellant's Parental Rights

The best interest of the child standard requires the court "to give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). Furthermore, "the rights of a parent shall not be terminated

[77] CCCYS Exhibit 9, STEPS Service Summary.

15

solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent." Id. However, the courts have stated that the emotional needs and welfare of the child have properly been interpreted to include "intangibles such as love, comfort, security, and stability." In re K.M., 53 A.3d 781, 791 (Pa. Super. 2012). It is well-established that a court must examine the individual circumstances of each and every case and consider all explanations offered by the parent to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination. In the Matter of the Adoption of Charles E.D.M., 708 A.2d 88, 91 (Pa. 1998). When making a Section 2511(b) determination, the courts are to focus on the child, not the parent. In Re Adoption of C.L.G., 956 A.2d 999, 1008 (Pa. Super 2008)(*en banc*).

In considering the developmental, physical and emotional needs of the child, it is clear that it is in L.A.'s best interest to terminate the parental rights of Appellant so that L.A. may be provided a stable and loving home from other caregivers. Since her placement almost twelve months ago, the Appellant has not sustained even minimal regular communication with or regarding his child. L.A., now sixteen months old, has spent the last eleven and a half months in the care of her kinship relatives, and has seen her father only four times since June 2015, partially due to the fact that he declined to participate in supervised visitation after it was first ordered, partially due to his incarceration, and partially due to his failure to follow up after missing several visits. Even after expressing a desire to work towards his goals, Appellant failed to consistently show up for visitation, to pass drug testing, or to secure safe and secure housing. Such inconsistency does not indicate that Appellant will be able to provide stability or security to the child. Furthermore, the Agency has provided ample evidence showing Appellant has been unable or unwilling to remedy the Agency's concerns about Appellant's ability to provide essential parental care, control and subsistence, and that Appellant is unlikely to do so in the future. We find that the child is provided with love, comfort, security and stability in the home of her kinship relatives, and that Father has not demonstrated he is able to provide any of the latter three conditions. Therefore, this Court finds that

16

involuntary termination of Appellant's parental rights was in the best interest of the child under 23 Pa.C.S. § 2511(b).

## CONCLUSION

This Court finds the issues raised by Appellant on appeal are without merit. For the reasons articulated in the above opinion, this Court respectfully requests the Superior Court of Pennsylvania to affirm this Court's order granting the Agency's Petition for Involuntary Termination of Rights of Appellant, H██ A██H██.

BY THE COURT,

Christylee L. Peck,   J.

Lindsay D. Baird, Esq.
Attorney for CCCYS

Cindy Villanella, Esq.
Guardian Ad Litem

Sheri Dee Coover, Esq.
Interim GAL

Marylou Matas, Esq.
Attorney for Mother

Joseph Hitchings, Esq.
Attorney for Father

CCCYS

CASA

17